FLORIDA STATE BOARD OF OPTOMETRY v. MILLARD G. GILMORE, *et al.*

3 So. (2nd) 708
En Banc
Opinion Filed July 22, 1941
Rehearing Denied September 16, 1941

*Yonge, Beggs & Carter,* for Appellant;
*William Fisher* and *Philip D. Beall, Jr.,* for Appellees.

*McKay, Macfarlane, Jackson & Ferguson,* as *Amicus Curiae.*

THOMAS, J.—The Florida State Board of Optometry sought an order enjoining Millard G. Gilmore, an employer, and his employees, Albert Sidel and J. Willie Bertrem, from practicing optometry, with the result that the chancellor restrained Sidel from that activity and prohibited Gilmore from allowing Sidel "as his employee or upon his business premises" to engage in that vocation. Upon the conclusion that there was no proof that Gilmore himself was practicing optometry "the application of the plaintiff for an injunction restraining . . . [him] . . . from continuing his employment of the defendant, J. Willie Bertrem . . ." was denied.

It is the latter provision which gave rise to this

appeal and prompted the appellant to present the problem whether, in view of Chapter 19031, Laws of Florida, Acts of 1939, a jewelry store may "employ a licensed physician to devote his full time to the practice of optometry for its account and in its name?"

We summarize the acts described in the stipulations of counsel so far as they are relevant to the question involved; Gilmore operates a jewelry store and in connection with it an optical department where Bertrem, a licensed physician, is employed. The latter engages in no other work than the practice of optometry for Gilmore, who pays him a "straight salary."

The Act, Chapter 19031, was intended to cover fully the regulation and supervision of optometry, declared a profession and carefully defined in Section 1. In Section 11 it is made "unlawful for any corporation, lay body, organization, group, or lay individual to engage, or undertake to engage in, the practice of optometry through means of engaging the services, upon a salary, commission or lease basis, or by other means or inducement, any person licensed to practice optometry in the State of Florida."

If we were to pause here without further examination of the above law it would appear that a clear violation of the quoted inhibitions had been shown because of the employment by one not licensed of another to practice optometry for him "upon a salary . . . basis." In reply appellee quotes Section 8, specially emphasizing that portion of it which we italicize: "It shall be unlawful for any one to practice optometry in this State without first procuring a certificate of registration and license . . . provided that *the terms and provisions of this Act shall not apply to duly licensed physicians and surgeons now or hereafter.*"

The appellees urge us to construe the part of the Act last quoted to free all physicians from the restrictions imposed generally upon those who are privileged to represent themselves as optometrists. It will be noted that although the terms and provisions of the Act are declared not to affect physicians such exception is included in the section making it unlawful to practice without registration and license.

It is patent that physicians are exempt because their training is so thorough that they are fitted to perform those services for which optometrists too are qualified, thus physicians, as such, were not required to procure a "certificate of registration and license as a registered optometrist" to practice optometry lawfully. If one practices optometry on his own account and responsibility he is by schooling presumed properly equipped and there is no need to examine into his fitness, the diagnoses and prescriptions for correction and relief of the human eye being an incident to and included in his medical education. But when a physician steps out of character and becomes the employee of a person himself not entitled to engage in the profession of optometry a direct violation of Section 11 results.

The provision of the Act of which appellee Gilmore has run afoul denounces the employment upon a salary basis of "any person licensed to practice optometry." Here qualifications are not the criterion but the act condemned by the Legislature is the hiring by one unlearned in the profession of another who is permitted by his knowledge to engage in it.

The evil sought to be prevented by such a relationship may be tersely stated. In this situation the responsibility of the employee in the performance of services so important to those whose eyes are ab-

normal as to be dignified with the not undeserved title, "professional" (McMurdo v. Getter, 298 Mass. 363, 10 N. E. [2nd] 139) is confused with his loyalty to the employer, while the latter although unskilled in the work is accountable to patients to whom he is not personally permitted to minister. The result, as was decided by the Supreme Court of Massachusetts, McMurdo v. Getter, *supra,* is a broken relationship "between a professional man and those who engage his services." See also Ezell v. Ritholz, 188 S. C. 39, 198 S. E. 419. Such conflicting loyalties should not be encouraged.

We do not find a purpose common to the inhibition against employment of a licensed optometrist and the exemption of physicians from the terms of the Act. The former relates to and illegalizes the hiring by laymen of optometrists, however qualified; the latter exempts physicians, as such, from further examination to establish their skill as optometrists.

For the reasons given the decree is—

Reversed.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN and ADAMS, J. J., concur.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—On appeal we review order or decree of the Circuit Court of Escambia County denying injunction. The pertinent part of the order or decree is:

"That, the Court being of the opinion that the record does not show that the defendant, Millard G. Gilmore, is himself engaged in the practice of optometry as defined by Chapter 19031, Laws of Florida, Acts of 1939, the application of the plaintiff for an injunction re-

straining the defendant, Millard G. Gilmore, from continuing his employment of the defendant J. Willie Bertrem be, and the same is hereby denied."

The appellant states the question for our consideration as follows:

"Where by statute it is unlawful for anyone to practice optometry without a certificate or registration and license, and it is also unlawful for any corporation, firm or individual to engage in the practice of optometry by engaging the services of a licensed optometrist, but the statute provides that it shall not apply to duly licensed physicians, may a jewelry store employ a licensed physician to devote his full time to the practice of optometry for its account and in its name?"

The question assumes more than is shown by the record because the record does not show that the employed licensed physician practices optometry in the name of the jewelry store.

A more accurate statement of the question involved is: Does Chapter 19031, Acts of 1939, warrant the granting of injunction to prohibit a licensed physician from practicing optometry by making mechanical examination of person's eyes and prescribing eye-glass lenses for customers of a jewelry store, when his sole compensation is salary paid by a jewelry store proprietor, and prohibiting a jewelry store proprietor from furnishing to its customers the service of such physician without charge and selling to its customers eye glasses according to such physician's prescription for same at the same price at which such glasses would be sold to such customer or any other physician's or optometrist's prescription?

Optometry is defined by Sec. 1 of Chapter 19031, *supra,* as follows:

"That the practice of optometry is hereby declared a profession, and for the purpose of this Act, is hereby defined as follows, viz.: to be the diagnosis of the human eye and its appendages, and the employment of any objective or subjective means or methods for the purpose of determining the refractive powers of the human eyes, or any visual, muscular, neurological or anatomic anomalies of the human eyes and their appendages, and the prescribing and employment of lenses, prisms, frames, mountings, orthoptic exercises, light frequencies and any other means or methods for the correction, remedy, or relief of any insufficiencies or abnormal conditions of the human eyes and their appendages, and an optometrist is one who practices optometry in accordance with the provisions of this Act."

Section 8 of the Act provides, *inter alia:*

"However, the terms and provisions of this Act shall not require those now holding certificates of registration and license as registered optometrist to further be examined and provided that the terms and provisions of this Act shall not apply to duly licensed physicians and surgeons now or hereafter."

Section 11 of the Act, provides, *inter alia:*

"It shall be unlawful for any person licensed to practice optometry under the provisions of this Act to advertise, practice or attempt to practice under a name other than his own except as an associate of, or an assistant to, an optometrist licensed under the laws of the State of Florida, and it shall be likewise unlawful for any corporation, lay body, organization, group, or lay individual to engage, or undertake to engage in the practice of optometry through means of engaging the services upon a salary, commission or lease basis,

or by other means of inducement, any person licensed to practice optometry in the State of Florida. Likewise, it shall be unlawful for any optometrist licensed under the provisions of this Act to undertake to engage in the practice of optometry with any organization, group or lay individual excepting that this shall not prohibit the employment by, or the forming of partnerships between optometrists duly licensed in the State of Florida, and further excepting any registered optometrist now engaged in the practice of optometry with a corporation, lay body, organization, group or lay individual providing that upon the termination of his present contract or agreement he shall be prohibited from engaging with any other corporation, lay body, organization, group or lay individual."

With these pertinent and applicable provisions of statutes in mind, it appears to us that it is unnecessary for us to discuss the statute as it might apply if the record showed the employment by the jewelry store of a licensed optometrist instead of the employment of a licensed physician. This must be true because Section 8, *supra,* in terms declares "that *the terms and provisions of this Act shall not apply to duly licensed physicians and surgeons now or hereafter"* (Italics supplied) ; and in the case as presented to us only the activities of a duly licensed physician and surgeon and his employment by the jewelry store is involved.

It is not made to appear that the public interest or welfare will in any wise suffer by reason of the activities complained of. Gilmore, the owner and operator of the jewelry store, is engaged in the business of selling eye-glasses in the regular course of his business and has employed, at his own expense, a duly licensed

physician and surgeon to render a service to his customers, which the law does not prohibit. The appellee Bertrem is a duly licensed physician and surgeon and renders a lawful service to Gilmore's customers without charge to the customers but for agreed compensation from Gilmore. The license duly issued to Bertrem as a physician and surgeon is all the evidence that is required to establish his fitness and qualifications to engage in that profession and the Act, *supra,* exempts his activities in the practice of optometry from the provisions of that Act.

It appears to me that the order or decree of the chancellor was based upon the construction of the statute, which we approve, and also upon the failure of the plaintiffs to show any invasion by the defendant of the *public* interest and welfare.