**S. S. HOLLENDER, INC., et al, v. DR. J. M. MORQUS, et al, comprising the Florida State Board of Optometry.**

23 So. (2nd) 89                                         June Term, 1945
July 27, 1945                                                 En Banc
Rehearing denied Sept. 10, 1945.

*George H. Salley* and *Arnold A. Ross,* for appellants.
*Knight, Underwood & Cullen,* for appellees.

THOMAS, J.:

A suit was brought by appellees, constituting the Florida State Board of Optometry, against Richard Store Company, a corporation, merchants, S. S. Hollender, Inc., opticians, and Aiken Crawford, physician, which culminated in a decree enjoining the two corporate defendants from "engaging in the practice of optometry," and the individual defendant from "practicing optometry . . . with any organization, group or lay individual not entitled to engage in the practice of optometry."

It is apparent from his final order that the chancellor believed the facts brought the controversy well within the range of our ruling in Florida State Board of Optometry v. Gilmore, 147 Fla. 776, 3 So. (2nd) 708. In that case we decided that a physician was not excepted from Section 11 of Chapter 19031, Laws of Florida, Acts of 1939 (Section 463.11, Florida Statutes, 1941, and F.S.A.), providing that it should be "unlawful for any corporation, lay body, organization, group or lay individual to engage . . . in the practice of optometry through means of engaging the services, upon a salary, commission, or lease basis, or by other means or inducement, any person licensed to practice optometry . . . " In other words, we said that a person licensed to practice optometry could not be so employed even though his qualifications existed by virtue of his training as a physician and surgeon and that this was true notwithstanding the proviso nestled in Section 8 of the Act (making it unlawful to practice without a certificate and relieving those then holding certificates from further examination) that the terms and provisions of

the act should not "apply to duly licensed physicians and surgeons . . . ."

There is no need to deal again with the question there concluded, but it is important to bear in mind the principle underlying that decision as we examine the facts in the instant case to see whether the corporate defendants undertook to "engage in the practice of optometry" by "engaging the services" of the individual defendant. Except for this principle the cited case is no help in the solution of the problem we now face because of the essential difference between the factual situation there and here.

Richard Store Company granted to S. S. Hollender, Inc., for one year, with privilege of renewal, the right "of conducting a dispensing optical department . . . for the sale, service and repair of optical goods and accessories, surgical goods and appliances, including health equipment and sick room supplies . . . together with the privilege of subletting a portion of its space to a duly licensed oculist for an office . . . ." The space allotted under the instrument was situated on the mezzanine floor of lessor's building. Lessee was also given the right to sell photographic supplies and equipment, and the rental was to be computed on a certain basis of percentage of the total of optical and surgical goods and, upon a different percentage of photographic supplies, sold by the lessee.

A few days later the lessee leased to Aiken Crawford, M.D., "office space completely furnished and equipped" at the rental of one dollar a month. This lease was short and compact, contained no unusual features, or reference to optometry except that it was covenanted by the lessee that he would not "sub-lease . . . for any other purpose than as an examining oculist's office . . . ." There was no mention in it of anything remotely connected with salary, bonus, commission, or employment or of any relationship between the parties except that of lessor and lessee. This room was occupied by Aiken Crawford, who prescribed lenses for those who consulted him. At the door was a sign bearing his name and the initials *M. D.* and the word *oculist*. The facts so far

related appear conceded. We shall now recount facts which do not appear to have been disputed.

According to an officer of Richard Store Company, there was no more connection between that business and the physician than existed between the former and any other optometrist in the community. The former had no control, continued the witness, over the fees the physician charged, the hours he worked, the manner of his practice, accounts due him or credits extended by him; nor had the store ever received any remuneration, fee, commission, payment, or promise from the physician.

S. S. Hollender, Inc., had no supervision over the activities, hours, fees, or methods of the physician. The physician received no rebates or commissions from S. S. Hollender, Inc., and the latter did not participate in any way in the fees or charges made by him for the examination of his patients. There was nothing to prevent his sending his patients to other opticians or to hinder his prescribing for persons who eventually bought their glasses elsewhere. It was testified further, and not disputed so far as we can discover, that two-thirds of the doctor's "eye examinations" were made for patients recommended to him by S. S. Hollender, Inc., and one-third by others; and that one-third of his income was derived from patients who purchased glasses from S. S. Hollender, Inc., and two-thirds from other sources. It was stated, though contradicted, that the cost of a prescription to a patient of the doctor was the same whether the glasses were ultimately furnished by S. S. Hollender, Inc., or one of its competitors.

From a careful study of the record we are convinced that the testimony overwhelmingly shows there was no relation whatever between the store and the physician, and none between the opticians and the physician except such as grew out of the lease which we have quoted.

It will have been noted that the predominant word in the statute we have quoted and for the violation of which the injunction was sought is the verb *engage,* which is used transitively and intransitively. The corporation could not have *engaged* in the business of optometry by *engaging* the

services of the physician. We think the inhibition simply means that ones ineligible may not embark in the business of optometry by hiring qualified persons to practice optometry for them. We do not find where either of the defendant cor- porations, in the light of preponderant testimony in this case, could be said to have embarked in the business of optometry, in the first place, or to have done so through the employment of the physician. He seems to have been independent of any control or supervision of either of the corporate defendants as to the amount of his fee or the manner of conducting his examinations. This is entirely different from the situation in Florida State Board of Optometry v. Gilmore, *supra,* where the physician received an out-and-out salary. So much for the corporate defendants.

We have spoken of the principle underlying the decision in the cited case. We remarked that the evil intended by the legislature to be obviated was the confusion which would result from the loyalty of the optometrist to his employer, and his responsibility for the performance of services to those who were in need of artificial lenses, and we pointed out that there should be no obstruction in the relationship between the person practicing what the Act declares a profession and those to whom he ministers. We find no violation of that principle on the part of the defendant doctor in this case. Evidently he dealt directly with his patients without any interference or control from the corporate defendants. To elaborate a bit on the facts as we have stated them, he con- sulted patients also at his home, and in some instances per- formed minor surgery. As we understand the record, he was not obligated to the Richard Store Company at all and only to S. S. Hollender, Inc., as its lessee.

It cannot be gainsaid that because of propinquity the ar- rangement was advantageous to the physician, to the op- ticians, and to the merchants. The doctor had the benefit of an office at nominal rental, and adjacent to a place where his patients could procure the glasses he advised. The op- ticians gained by the nearness of the doctor's office, for one wishing to get his prescription filled would find it convenient to deal with an optician close by. Although there seems to

have been no obligation to do so, it is only natural that each should have recommended the other. Of course the advantage to the merchant was, primarily at least, the percentage on the business of the opticians, paid under the lease agreement. We do not see anything inherently wrong in such an arrangement so long as the relationship between the doctor and his patients remains unbroken, and so long as neither of these corporations actually engages in the practice of optometry. We think neither physician, nor opticians, nor merchants transgressed the statute; so we conclude that the injunction was not warranted.

The decree is reversed with directions to dismiss the bill of complaint.

CHAPMAN, C. J., TERRELL, BUFORD and SEBRING, JJ., concur.

BROWN and ADAMS, JJ., dissent.