BUSCH JEWELRY Co., et al. *v.* STATE BOARD OF OPTOMETRY.

Feb. 9, 1953

No. 38670          19 Adv. S. 6          62 So. 2d 770

476

*Barnett, Jones & Montgomery,* for appellants.

*Richard A. Billups, Jr.,* for appellee.

Hall, J.

Appellee brought suit to enjoin Busch Jewelry Company and Dr. F. M. Dooley from unlawfully engaging in the practice of optometry. This appeal is from a decree granting the relief prayed for and the sole question presented is whether appellee has authority to bring such a suit in view of the fact that Dr. Dooley is a licensed medical doctor and not an optometrist.

Chapter 431, Laws of 1946, (Section 8923-51, Supplement to Code of 1942) provides that "An action for any injunction may be brought and maintained in the name of any state board authorized to hold examinations and grant license to practice any profession to enjoin and prohibit any person from the practice of any profession required to be licensed by said board, when such person is practicing said profession and has not been granted a license therefor."

Our statutes defining the practice of optometry, regulating the same, and providing for examinations for license to practice that profession are found as Sections 8832-8846, Code of 1942. Section 8846 provides that "The provisions of this chapter shall not apply to physicians or surgeons practicing under authority of licenses issued under the laws of this state for the practice of medicine or surgery." Appellants contend that since Dr. Dooley is a licensed physician the State Board of Optometry has no authority to bring or maintain this suit, and that such authority is vested solely in the State Board of Health.

The record shows that Busch Jewelry Company is a corporation operating several stores in Mississippi as well as numerous stores in other states. Its home office is in Birmingham, Alabama, where lenses for its optical department are ground and finished and from which point they are mailed to its local stores for delivery to customers. Dr. Dooley is 84 years of age and began the practice of medicine in 1890. After following his profession at numerous places in Mississippi and Louisiana he retired from the practice in 1936 or 1937 and later took up the fitting and prescribing of glasses for the correction of defects in vision. He is regularly employed by the company at a salary of $400.00 per month and devotes his entire time to the business of that company in the examination of eyes and prescribing spectacles; this is done in an office furnished to him free of rent by the company in its store at Jackson and with the use of equipment furnished him by the company. He charges no fee for examinations and his prescriptions are filled by the company. He admits that he is practicing optometry but says that he considers his work as coming under his license as a physician. The company paid privilege licenses for him both as an optometrist and as a physician.

In the case of Sears, Roebuck & Co., et al. v. State Board of Optometry, 213 Miss. 710, 57 So. 2d 726, we held that our statutes governing the practice of optometry have the effect of prohibiting a corporation from practicing optometry through a licensed employee and that the exemptions of the statute do not exempt corporations which undertake to perform optometrical work through a licensed employee. It is undisputed that Busch Jewelry Company is engaged in optometrical work and we think it makes no difference whether that work is done by a licensed optometrist or a licensed physician. In either event the State Board of Optometry has the right under Section 8923-51 to bring and maintain an

action to enjoin the company from engaging in the practice of optometry. Numerous decisions from other courts so hold and we shall mention a few of them.

In Ritholz, et al. v. Arkansas State Board of Optometry, 206 Ark. 671, 177 S. W. 2d 410, it was held that an injunction was properly granted against National Optical Stores Company, then a partnership, prohibiting it from engaging in the practice of optometry notwithstanding the fact that the examinations made and the prescriptions issued for glasses for the correction of defects in vision were by a duly licensed physician who was employed by the company on a salary basis.

In Ritholz, et al. v. Commonwealth of Virginia, 184 Va. 339, 35 S. E. 2d 210, it was likewise held that the same company, operating as a partnership, was engaged in the practice of optometry from which it was enjoined even though the examinations were made and prescriptions issued by licensed physicians in its employment. That case cites with approval the Arkansas case above mentioned as well as cases from Wisconsin, Washington and Massachusetts which hold to the same effect.

In State, ex rel. Loser, Attorney General v. National Optical Stores (a corporation), 189 Tenn. 433, 225 S. W. 2d 263, it was held that the device whereby the company uses the services of medical doctors in the examination of eyes and the writing of prescriptions was simply an effort to evade the law governing the practice of optometry, and an injunction to prevent such practice was upheld. The above mentioned cases are cited in the opinion as well as numerous others, including Ezell v. Ritholz, 188 S. C. 39, 198 S. E. 419, which is to the same effect.

In State Board of Optometry v. Gilmore, et al., 147 Fla. 776, 3 So. 2d 708, the Supreme Court of Florida had before it the identical question which is here presented. The Florida Act regulating the practice of optometry is similar to our statutes (Chapter 19031,

Vol. 1, General Laws of Florida 1939). It provides that "the terms and provisions of this Act shall not apply to duly licensed physicians and surgeons now or hereafter." The facts as stated in the opinion in that case were: "Gilmore operates a jewelry store and in connection with it an optical department where Bertrem, a licensed physician, is employed. The latter engaged in no other work than the practice of optometry for Gilmore who pays him a 'straight salary'." Under these facts the Court said: "If one practices optometry on his own account and responsibility he is by schooling presumed properly equipped and there is no need to examine into his fitness, the diagnoses and prescriptions for correction and relief of the human eye being an incident to and included in his medical education. But when a physician steps out of character and becomes the employee of a person himself not entitled to engage in the profession of optometry a direct violation of section eleven results.

"The provision of the act of which appellee Gilmore has run afoul denounces the employment upon a salary basis of 'any person licensed to practice optometry'. Here qualifications are not the criterion but the act condemned by the legislature is the hiring by one unlearned in the profession of another who is permitted by his knowledge to engage in it. . . .

"We do not find a purpose common to the inhibition against employment of a licensed optometrist and the exemption of physicians from the terms of the act. The former relates to and illegalizes the hiring by laymen of optometrists, however qualified; the latter exempts physicians, as such, from further examination to establish their skill as optometrists."

Now it is true that section eleven of the Florida Act specifically prohibits an unlicensed person or corporation from employing a licensed person to carry on the business while our legislative acts do not specifically so

prohibit, but our decision in the Sears, Roebuck case, supra, does condemn that practice and declare it unlawful and subject to prohibition by injunction. The Florida court enjoined the physician from engaging in the practice of optometry under such an arrangement as that shown in the case at bar for the reason that he has stepped out of his character as a physician when he becomes the employee of one not licensed to practice optometry and thereby lends his license as a physician to the unlawful practice of optometry. Our statute does not authorize a physician to unlawfully engage in the practice of optometry but merely permits him to lawfully engage in that profession on the faith of his license as a physician without requiring him to take a further examination as to his qualifications as an optometrist. When he abandons the practice of medicine and unlawfully engages in the practice of optometry by becoming an employee of one not authorized to practice that profession we think both the employer and the employee are subject to injunction at the instance of the State Board of Optometry and that the physician in such case cannot hide behind his license to practice medicine. The chancellor was justified in finding from the evidence, as he did, that Dr. Dooley is not practicing medicine but is only a "front" for Busch Jewelry Company in unlawfully practicing optometry. By the decree appealed from Dr. Dooley was not enjoined from practicing medicine but only from unlawfully practicing optometry. He is still permitted to practice medicine or optometry on his own account in a lawful manner. The decree of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.