688 So.2d 404 (1997)
COLE VISION CORPORATION and Visionworks, Inc., Appellants,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, BOARD OF OPTOMETRY, Appellee.
No. 96-676.
District Court of Appeal of Florida, First District.
February 14, 1997.
*406 Ronald A. Labasky, Patrick J. Phelan, Jr., and Carl R. Peterson, Jr., of Skelding, Labasky, Corry, Eastman, Hauser & Jolly, Tallahassee, for Appellants.
Rosa H. Carson of Carson & Adkins, Tallahassee, for Appellee/The Florida Optometric Association.
John E. Griffin, Tallahassee, for Appellee/Board of Optometry.
DAVIS, Judge.
Cole Vision Corporation and Visionworks, Inc., appeal a final order of the Division of Administrative Hearings finding that the appellants did not have standing to challenge proposed Florida Administrative Code Rule 59V-3.008 and otherwise denying relief. Although we reverse that part of the order finding the appellants did not have standing, we affirm that part of the order rejecting the challenge on the merits.
Appellants are corporations which operate retail optical establishments, employ opticians, and furnish optical services and devices to the public. They lease space within their optical stores to licensed optometrists to engage in the independent practice of optometry on the premises. On December 3, 1993, the Florida Board of Optometry (Board) published proposed amendments to Florida Administrative Code Rules 61F8-3.001, 3.003 and 3.008, which were subsequently renumbered and moved to chapter 59. The only rule at issue in this appeal currently is codified as Rule 59V-3.008. Appellants filed a petition challenging the proposed rules on the basis that the rules impermissibly enlarged, modified or contravened the statutes implemented, that the rules *407 were impermissibly vague, that the rules unlawfully established evidentiary presumptions of illegal conduct, and that the rules unlawfully infringed upon protected constitutional rights of free speech. Theodore N. Gillette, O.D., a licensed optometrist, also filed a petition challenging the proposed rules, and the cases were consolidated for hearing. The hearing officer rendered a final order in which he determined that the appellants did not have standing to challenge the proposed rules and in which he upheld each of the proposed rules in their entirety.
We address first the hearing officer's ruling on standing. Section 120.54(4)(a), Florida Statutes, grants standing to "[a]ny substantially affected person" to challenge a proposed rule as an invalid exercise of delegated legislative authority. A petitioner who establishes a substantial injury in fact that is within the "zone of interest to be protected or regulated" by the promulgating statute or other related statutes meets the standing requirement. See All Risk Corp. Of Fla. v. Florida, Dep't Of Labor & Employment Sec., 413 So.2d 1200, 1202 (Fla. 1st DCA 1982); Florida Medical Ass'n v. Florida, Dep't of Prof. Reg., 426 So.2d 1112, 1117 (Fla. 1st DCA 1983). Furthermore, this court has recognized that a less demanding standard applies in a rule challenge proceeding than in an action at law, and that the standard differs from the "substantial interest" standard of a licensure proceeding. See Florida, Dep't of Prof. Reg. v. Florida Dental Hygienist Ass'n, 612 So.2d 646, 651-52 (Fla. 1st DCA 1993).
We conclude that appellants met the requirements for standing. We are particularly compelled to this conclusion by section 455.228(1), Florida Statutes, which specifically provides for legal action, including the imposition of a civil penalty up to $5000 per offense, against unlicensed persons who violate "any provision of this chapter or any statute that relates to the practice of a profession regulated by the department or the agency, or any rule adopted pursuant thereto." (Emphasis added.) And, although the board has suggested that Rule 59V-3.008 regulates only the conduct of licensed optometrists, at least one paragraph of the rule on its face purports to regulate corporations, such as appellants:
No corporation, lay body, organization, or individual other than a licensed practitioner shall engage in the practice of optometry through the means of engaging the services, upon a salary, commission, or other means or inducement, of any person licensed to practice optometry in this state.
Rule 59V-3.008(2). Because this rule purports to regulate appellants, and as a result potentially exposes them to legal action and monetary penalties, appellants have demonstrated that they are substantially affected by this rule. See Televisual Communications, Inc. v. Florida, Dep't of Labor & Employ. Sec., 667 So.2d 372 (Fla. 1st DCA 1995); see also Federation of Mobile Home Owners of Fla. v. Florida Manufactured Housing Ass'n, Inc., 683 So.2d 586 (Fla. 1st DCA 1996).
Turning to the merits, the appellants contend that Rule 59V3.008 constitutes an invalid exercise of delegated legislative authority. We find no basis for reversing the hearing officer's determinations as to each of the arguments asserted by appellants. Appellants first assert that the hearing officer's construction of section 463.014(1)(a) and (b), Florida Statutes, implemented by the Board in Rule 59V-3.008, as prohibiting business associations or affiliations between optometrists and optical corporations is clearly erroneous. We disagree. Section 463.014(1)(a), Florida Statutes (1993), provides:
No corporation, lay body, organization, or individual other than a licensed practitioner shall engage in the practice of optometry through the means of engaging the services, upon a salary, commission, or other means or inducement, of any person licensed to practice optometry in this state. Nothing in this section shall be deemed to prohibit the association of a licensed practitioner with a multidisciplinary group of licensed health care professionals, the primary objective of which is the diagnosis and treatment of the human body.
Section 463.014(1)(b), Florida Statutes (1993), provides:

*408 No licensed practitioner shall engage in the practice of optometry with any corporation, organization, group, or lay individual. This provision shall not prohibit licensed practitioners from employing, or from forming partnerships or professional associations with, licensed practitioners licensed in this state or with other licensed health care professionals, the primary objective of whom is the diagnosis and treatment of the human body.
Contrary to the arguments of appellants, sections 463.014(1)(a) and (1)(b) do not conflict with sections 463.014(1)(c), 484.006(2) and 455.201(4).
Section 463.014(1)(c), Florida Statutes (1993), provides: "No rule of the board shall forbid the practice of optometry in or on the premises of a commercial or mercantile establishment." Section 463.014(1)(c) is not inconsistent with sections 463.014(1)(a) and (b). Sections 463.014(1)(a) and (b) prohibit an optometrist from associating with a lay entity in a manner that would allow the lay entity to provide optometric services. Unlike sections 463.014(1)(a) and (b), which address a prohibited relationship, section 463.014(1)(c) concerns a permissible location at which an optometrist can practice.
Section 484.006(2), Florida Statutes (1993), provides: "No rule or policy of the board shall prohibit any optician from practicing jointly with optometrists or medical doctors licensed in this state." Section 484.006(2) does not conflict with sections 463.014(1)(a) and (b) because chapter 484 concerns the practice of opticianry and chapter 463 concerns the practice of optometry. Under section 463.014(1)(a) and (b), an optometrist cannot form a partnership or professional association with an optician because opticianry is not a licensed health care profession "the primary objective of which is the diagnosis of the human body." See § 484.013(3), Fla. Stat.(1993). Sections 463.014(1)(a) and (b) and section 484.006(2), when read together, mean that, while optometrists cannot form partnerships or professional associations with or be employed by opticians, opticians can be employed by optometrists.
The appellants' reliance on section 484.006(2) as authorizing retail optical establishments to practice "jointly" with an optometrist is misplaced because section 484.006(2) concerns opticians, not optical establishments. We agree with the Board that the assertion that opticians, optical establishments and optometrists can practice "jointly" on shared premises, and yet independently, is logically inconsistent.
Finally, section 455.201(4), Florida Statutes (1993), provides in pertinent part:
No board, nor the department, shall take any action which tends to create or maintain an economic condition that unreasonably restricts competition, except as specifically provided by law.
Sections 463.014(1)(a) and (b) do not conflict with section 455.201(4). As found by the hearing officer, sections 463.014(1)(a) and (b), by expressly restricting the circumstances and business relationships in which an optometrist can practice, are legislatively created restraints of trade that do not violate section 455.201(4).
Section 463.014(1) was reenacted in 1991. See Ch. 91-429, Laws of Fla. (1991). When the legislature reenacts a statute, it is presumed to know and adopt the construction of the statute by the agency responsible for its administration except to the extent that the new statute differs from prior constructions. State ex rel. Szabo Food Servs., Inc. v. Dickinson, 286 So.2d 529, 531 (Fla. 1973); Peninsular Supply Co. v. C.B. Day Realty of Florida, Inc., 423 So.2d 500, 502 (Fla. 3d DCA 1982). As noted in the hearing officer's findings, the Board for many years before 1991, in rules, declaratory statements and disciplinary proceedings, interpreted sections 463.014(1)(a) and (b) as prohibiting professional associations and affiliations between optometrists and optical corporations. The legislature therefore must be presumed to have adopted the Board's interpretation that professional associations and affiliations between optometrists and lay corporations for the provision of optometric services are unlawful when it reenacted the statute in 1991.
Turning to appellants' second argument, we hold that rule 59V3.008 does not *409 enlarge, modify or contravene sections 463.014(1)(a) and (b). We reject the appellants' contention that paragraph (10) of rule 59V-3.008 redefines "optometry" to include activities that relate solely to the business aspects of optometric practice and the business relationship between optometrists, opticians and optical corporations. Section 463.002(5), Florida Statutes (1993), defines "optometry" as:
the diagnosis of conditions of the human eye and its appendages; the employment of any objective or subjective means or methods, including the administration of topical ocular pharmaceutical agents, for the purpose of determining the refractive powers of the human eyes, or any visual, muscular, neurological, or anatomic anomalies of the human eyes and their appendages; and the prescribing and employment of lenses, prisms, frames, mountings, contact lenses, orthoptic exercises, light frequencies, and any other means or methods, including topical ocular pharmaceutical agents, for the correction, remedy, or relief of any insufficiencies or abnormal conditions of the human eyes and their appendages.
Section 463.002(5) addresses only the permissible scope of an optometrist's practice. The legislature did not intend to address the scope of permissible business relationships an optometrist may have with an unlicensed entity or person in section 463.002(5). Rather, the scope of permissible business relationships an optometrist may have with unlicensed entities and individuals is addressed in section 463.014(1). Rule 59V-3.008 implements section 463.014, not section 463.002.
Furthermore, paragraph (10) of rule 59V-3.008 does not attempt to define "optometry." Rather, paragraph (10) defines the terms "any aspect of the practice of optometry," and "any term or condition relative to his/her practice of optometry." Paragraphs (5), (7) and (10) of rule 59V-3.008, when read together, provide guidance to optometrists concerning what type of agreements or relationships should be avoided to avoid the practice of optometry by a lay entity through an agreement that allows the lay entity to control the optometrist's practice.
Although appellants further attack paragraph (10) of rule 59V3.008 as arbitrary and capricious, we find this argument waived for appeal because the appellants withdrew their challenge to rule 59V3.008 on that ground prior to hearing.
Appellants next argue that paragraph (15) of rule 59V-3.008 enlarges, modifies or contravenes section 463.014 because that statute does not impose a prohibition on "association or affiliation" with corporate entities. This argument is without merit because section 463.014(1)(b), Florida Statutes (1993), specifically provides: "No licensed practitioner shall engage in the practice of optometry with any corporation, organization, group, or lay individual."
The hearing officer rejected as not supported by the evidence the argument that the effect of rule 59V-3.008 is to impose broad restrictions on the business practices and personal conduct of optometrists practicing in commercial establishments. Appellants' argument that section 463.014 prohibits only the direct employment of an optometrist by a commercial establishment is without merit. Section 463.014(1)(a), Florida Statutes (1993), provides: "No corporation, lay body, organization, or individual other than a licensed practitioner shall engage in the practice of optometry through the means of engaging the services, upon a salary, commission, or other means or inducement, of any person licensed to practice optometry in this state." Section 463.014(1)(b), Florida Statutes (1993), provides: "No licensed practitioner shall engage in the practice of optometry with any corporation, organization, group, or lay individual." As argued by the Board, if the legislature had intended only to restrict the employment of an optometrist by a commercial establishment, it could have done so.
Appellants rely on S.S. Hollender, Inc. v. Morqus, 156 Fla. 173, 23 So.2d 89 (1945), in support of their argument that section 463.014 only prohibits an optometrist from being directly employed by an optical corporation. Although the Florida Supreme Court did interpret a similar former statute as meaning that "ones ineligible may not embark *410 in the business of optometry by hiring qualified persons to practice optometry for them," the court considered various factors to determine whether there was evidence of any relationship between a commercial establishment and an optometrist other than that of a lessor and lessee. Hollender, 23 So.2d at 90-91. In finding that the optometrist and the commercial establishment did not violate the statute, the court noted that the evidence showed that the store had no control over the optometrist's fees, the hours he worked, the manner of his practice, accounts due him or credits extended by him, nor did the store ever receive any remuneration, fee, commission, payment or promise from the optometrist. Hollender, 23 So.2d at 90. The court noted that the store did not supervise the optometrist's activities, hours, fees or optometry methods. Id. The court further noted that the optometrist received no rebates or commissions from the store, and the store did not participate in any way in the fees or charges made by the optometrist for the examination of his patients. Id. Many of the factors mentioned by the court in Hollender are the same type of factors set forth in paragraphs (10) and (15) of rule 59V-3.008, and thus Hollender supports the hearing officer's interpretation.
Finally, contrary to appellants' arguments, the Board has the authority to regulate the business aspects of an optometrist's practice. Chapter 463 contains various provisions that regulate the "business" aspect of an optometrist's practice. See e.g., § 463.005(1)(d), (e), Fla. Stat. (1993); § 463.009, Fla. Stat. (1993); § 463.011, Fla. Stat. (1993); § 463.014(1)(d), (e), Fla. Stat. (1993); § 463.016(1)(e), (f), (h-k), Fla. Stat. (1993).
We next reject the appellants' assertion that rule 59V3.008(15) is vague, establishes inadequate standards for agency decisions and vests unbridled discretion in the Board. If a term is not defined in a statute or rule, its common ordinary meaning applies. Florida, Dep't of Admin., Div. of Retirement v. Moore, 524 So.2d 704, 707 (Fla. 1st DCA 1988). "A government restriction is vague if it `either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " Witmer v. Florida, Dep't of Bus. & Prof. Reg., Div. of Pari-Mutuel Wagering, 662 So.2d 1299, 1302 (Fla. 4th DCA 1995) (citation omitted). In the present case, the phrases "implies or suggests," "clearly and sufficiently indicate," and "associated or affiliated with" in paragraph (15) which appellants claim are vague, are easily understood by persons of ordinary intelligence, particularly when read in the context of other provisions of the rule.
Furthermore, the hearing officer did not give credit or weight to Gillette's testimony that he could not understand what he was supposed to do in order to comply with the rule. The hearing officer also noted that Gillette had entered into at least twelve leases, had developed and sold other practices and had conducted his chain store optometric practice successfully, both in financial terms and in terms of avoiding regulatory violations, under the similar existing rule. The hearing officer determined that the representative lease, which Gillette introduced into evidence, when compared with the representative lease of Visionworks, from whom he had leased space, showed that Gillette fully understood the requirements of the similar existing rule.
Finally, paragraph (15) of rule 59V-3.008 establishes adequate standards to assist optometrists in determining whether they are engaged in a business relationship with a commercial establishment in violation of section 463.014(1). The sufficiency of a rule's standards and guidelines may depend on the subject matter dealt with and the degree of difficulty involved in articulating finite standards. Askew v. Cross Key Waterways, 372 So.2d 913, 918 (Fla.1978). We agree with the Board that it is not possible for it to adopt rules in such excruciating detail that every potential circumstance arising in the practice of optometry on a mercantile or commercial establishment will be expressly addressed.
In their fourth argument, the appellants assert that paragraph (15) of rule 59V-3.008 unlawfully establishes evidentiary presumptions *411 that are unsupported by the enabling statute. We disagree that the rule establishes any evidentiary presumptions, and agree with the hearing officer that paragraph (15) "merely spells out the criteria or factors the Board considers relevant in interpreting whether an optometrist's professional judgment is free from any compromising control, as required by the provisions of Section 463.014, Florida Statutes."
Turning to the fifth argument, the hearing officer correctly determined that paragraphs (10)(i) and (15)(a), (e) and (f) of Rule 59V-3.008 do not unlawfully restrict commercial free speech in violation of the First Amendment. In Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the United States Supreme Court set forth the following four-part analysis for determining whether commercial speech is protected by the First Amendment:
For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
Central Hudson, 447 U.S. at 566, 100 S.Ct. at 2351, 65 L.Ed.2d at 351. In the present case, the hearing officer determined that the petitioners had not satisfied the first prong of the Central Hudson analysis because the activities and relationships they sought to protect were not shown to be lawful under sections 463.014(1)(a) and (b). The hearing officer determined that, even if the speech was protected, the board clearly demonstrated a substantial interest in restricting or regulating it. The hearing officer concluded:
147.... While the practice of optometry on a mercantile establishment is authorized by Section 463.014(1)(c), Florida Statutes, subparagraphs (a) and (b) of that section also proscribe the lay practice of optometry and the association of licensed optometrists with unlicensed entities. Pursuant to its statutory charge and the various provisions of Chapter 463, Florida Statutes, the Board has a substantial State interest in seeing that the welfare of the eye care consuming public is protected by the knowledge of who is responsible for their eye care and treatment and by the assurance that the optometrist who treats them can do so by exercising totally independent professional judgment on their behalf. The patients should be assured that he owes his professional allegiance only to them and that he is not unduly influenced in his professional decisions as to their care by financial and other business considerations placed on him by his business relationship with the optical establishment. The above analysis and discussion in this Final Order shows that, indeed, this is the substantial State interest served by the proposed rule. It is concluded, by that analysis, that the regulation at issue `directly advances the governmental interest asserted.'
The hearing officer further concluded that the rule is not more extensive than is necessary to serve that interest under the last prong of the Central Hudson analysis. The hearing officer concluded:
148..... It does not prohibit any practice of optometry on a mercantile establishment or dissemination of the fact of the existence of such practice in the advertising of the optometrist or of the mercantile establishment. Rather, it only provides guidelines which will constitute "evidence" that, if those circumstances exist, a violation may be occurring. The rule does not go so far as to attempt to set up an evidentiary rule or presumption that if such circumstances exist, a violation is established. The analysis in this Final Order shows that the rule, as proposed, is not vague and clearly affords guidance to optometrists concerning how to establish and conduct their practices on commercial establishments without being in violation. It leaves to them the additional safeguard that a declaratory statement can be sought to interpret a given situation by the Board in order to avoid committing a violation. The proposed rule is certainly not the blanket prohibition on such commercial *412 practice activities which the Petitioners seek to make it out to be. It is no more extensive than is necessary to serve the substantial State interest expressed and described in this Final Order. Contrary to the Petitioners' assertion, the Board, by this proposed rule, is not seeking to restrict or prohibit dissemination of advertising materials, which truthfully and accurately describe professional optometric services available on the premises of an optical establishment. Rather, the proposed rule seeks to describe what sort of business arrangements between optometrists and optical establishments are lawful under the enabling and implemented statute, as discussed in more detail hereinabove. It does not seek to restrict or prohibit the dissemination of a description of those services or business arrangements to the public, which are truthful.
We find no error in the hearing officer's conclusions.
The appellants' final argument is that rule 59V-3.008 restricts competition in the marketplace for eyewear and eye care services in violation of section 455.201(4). Section 455.201(4), Florida Statutes (1993), provides in pertinent part: "No board, nor the department, shall take any action which tends to create or maintain an economic condition that unreasonably restricts competition, except as specifically provided by law." (Emphasis added.) The hearing officer properly determined that "Chapter 463, Florida Statutes, by limiting the practice of optometry to licensed persons and, in particular, Section 463.014(1)(a) and (b), Florida Statutes, by expressly restricting the circumstances and business relationships in which an optometrist can practice optometry, are provisions which amount to legislatively-created and sanctioned restraints of trade." And as the hearing officer further correctly concluded, because the rule is "specifically provided by law," it therefore does not violate section 455.201(4).
Finally, we note that the appellants failed to present preponderant, material evidence that the rule tends to create an economic condition that unreasonably restricts competition in violation of section 455.201(4). Contrary to the suggestion of appellants, they did not present unrebutted evidence that the rule will substantially reduce competition in the marketplace for eyewear and eye care services. In support of their assertion that the rule will reduce competition in the marketplace for eyewear and eye care services, the appellants rely on the testimony of Professor Haas-Wilson. The hearing officer, however, concluded that her testimony was not preponderant, material evidence, and did not credit her testimony. The board and the Florida Optometric Association presented evidence regarding the harm that would result from an impermissible business relationship between an optometrist and a commercial entity. The hearing officer was acting within his discretion as trier of fact in accepting this view of the evidence.
We accordingly vacate that part of the final order finding that the appellants lacked standing. We affirm the order in all other respects.
BARFIELD, C.J., and KAHN, J., concur.