751 So.2d 94 (1999)
Gary LANOUE, Appellant,
v.
FLORIDA DEPARTMENT OF LAW ENFORCEMENT, Appellee.
No. 99-260.
District Court of Appeal of Florida, First District.
December 29, 1999.
Rehearing Denied January 27, 2000.
*95 Diane D. Tremore and Chris H. Bentley, of Rose, Sundstrom & Bentley, LLP, Tallahassee, for Appellant.
Joseph S. White and Richard D. Courtemanche, Jr., of Florida Department of Law Enforcement, Tallahassee, for Appellee.
KAHN, J.
In this case, Gary Lanoue appeals an order entered by an administrative law judge (ALJ) dismissing, for lack of standing, his petition challenging rules and policies of the Florida Department of Law Enforcement (FDLE). We affirm in part, reverse in part, and remand for further proceedings.
On February 17, 1998, a police officer stopped Lanoue, who was operating a motor vehicle. The officer arrested Lanoue and, as a result of that arrest, administered a test, pursuant to the implied consent law contained in chapter 316, Florida Statutes, to determine the amount of alcohol in Lanoue's breath. Lanoue gave two breath samples, each of which indicated a breath-alcohol level of 0.09g/210L. Lanoue was charged with the offense of driving under the influence (DUI) and required to give a cash appearance bond. As a result of his DUI charge, Lanoue's driver's license was administratively suspended for *96 six months. Lanoue pled not guilty to the charge and is currently awaiting trial.
In October 1998, Lanoue filed a petition challenging Rule 11D-8.002(1), Rule 118.006(2), and FDLE/ATP Form 16, adopted by reference in Rule 11D-8.003(7), as invalid exercises of delegated legislative authority. These rules implement the implied consent law. Specifically, Rule 118.002(1) provides a definition for "acceptable range" as it relates to the calibration of breath-testing machines:
Acceptable rangeShall mean the observed values must fall within the following ranges at each alcohol target concentration: 0.05 g/210L range is 0.045 0.055 g/210L; 0.08 g/210L range is 0.0750.085 g/210L; 0.20 g/210L range is 0.1900.210 g/210L.
Rule 11D-8.006(2) concerns the alcohol reference solution (ARS) used to inspect the breath-testing machines:
The agency must use alcohol reference solution and/or alcohol stock solution prepared by the Department, or alcohol reference solution and/or alcohol stock solution from a source approved by the Department.
Rule 11D-8.003(7) concerns inspection procedures and incorporates by reference FDLE/ATP Form 16:
When conducting an evaluation for approval of breath test instruments in accordance with this rule, the Department shall conduct a minimum of 50 tests at each concentration for acceptable range, precision, and alcohol-free reading in accordance with the Inspection Procedures FDLE/ATP Form 16 January, 1997, which is approved by the Department and is incorporated by reference.
Lanoue's petition also challenged non-rule policies and statements utilized by FDLE regarding the means, methods, and criteria for analyzing and approving the source of the ARS used to calibrate the breath-testing machines. The petition alleged that these statements and policies had not been adopted or proposed as rules, contrary to section 120.54(1)(a).
Formal hearings took place before the ALJ in November 1998. In an order rendered December 24, 1998, the ALJ found that Lanoue lacked standing to raise the claims set forth in his petition. Specifically, the ALJ, after making extensive factual findings regarding the FDLE's procedures in calibrating breath-testing machines, found that Lanoue had not established a real and sufficiently immediate injury in fact, nor had he shown that he was substantially affected by the challenged rules and policies. In so finding, the ALJ presumed the validity of the challenged rules and then determined that any error in calibrating the breath-testing machines did not affect Lanoue because his recorded breath-alcohol level exceeded the range of variation under the rules even assuming that a low-level ARS was used to calibrate a high-reading machine. We find that the ALJ erred in concluding that Lanoue did not have standing to challenge the existing rules.
Section 120.56(1), Florida Statutes (1997), sets forth the procedures for challenging the validity of a rule or a proposed rule. Section 120.56(1)(a) provides that "[a]ny person substantially affected by a rule or a proposed rule may seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority." "In order to meet the substantially affected test ..., the petitioner must establish: (1) a real and sufficiently immediate injury in fact; and (2) `that the alleged interest is arguably within the zone of interest to be protected or regulated.'" Ward v. Board of Trustees of the Internal Improvement Trust Fund, 651 So.2d 1236, 1237 (Fla. 4th DCA 1995) (quoting All Risk Corp. of Fla. v. State, Dep't of Labor & Employment Sec., 413 So.2d 1200, 1202 (Fla. 1st DCA 1982)); see Cole Vision Corp. v. Department of Bus. & Prof. Reg., 688 So.2d 404, 407 (Fla. 1st DCA 1997) ("A petitioner who establishes a substantial injury *97 in fact that is within the `zone of interest to be protected or regulated' by the promulgating statute or other related statutes meets the standing requirement."); Televisual Communications, Inc. v. State, Dep't of Labor & Employ. Sec., 667 So.2d 372, 374 (Fla. 1st DCA 1995) ("The hearing officer correctly noted that to demonstrate that it is substantially affected by a proposed rule, a party must establish that, as a consequence of the proposed rule, it will suffer injury in fact and that the injury is within the zone of interest to be regulated or protected.").
As explained in more detail below, contrary to the ALJ's determination, Lanoue satisfied both elements of the "substantially affected" test. He suffered a real and sufficiently immediate injury in fact because he was administered a breath test pursuant to the applicable statutes and rules, and he has been charged with a criminal offense (DUI), for which the results of a breath test indicating 0.08 or higher (as his did) constitute prima facie evidence of guilt. Further, this injury is within the zone of interest to be regulated by those statutes and rules.
"To satisfy the sufficiently real and immediate injury in fact element the injury must not be based on pure speculation or conjecture." Ward, 651 So.2d at 1237. Section 316.193(1)(c), Florida Statutes (1997), provides that "[a] person is guilty of the offense of driving under the influence... if the person is driving or in actual physical control of a vehicle within this state and ... [t]he person has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath." In this case, Lanoue was arrested and, pursuant to the implied consent law, administered a breath test to determine the amount of alcohol in his breath. He provided two samples, each of which indicated a breath-alcohol level of 0.09 g/210 L. As a result, Lanoue was charged with DUI. If convicted, Lanoue faces a possible fine of no more than $500 and imprisonment for not more than 6 months (assuming this would be his first conviction).
Pursuant to the implied consent law, any person operating a motor vehicle in this state is deemed to have consented to submit to testing to determine the alcohol content of his or her breath if lawfully arrested for any offense committed while driving or in actual physical control of a motor vehicle while under the influence:
Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by so operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test including, but not limited to, an infrared light test of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath, and to a urine test for the purpose of detecting the presence of chemical substances as set forth in s. 877.111 or controlled substances, if the person is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages, chemical substances, or controlled substances. The chemical or physical breath test must be incidental to a lawful arrest and administered at the request of a law enforcement officer who has reasonable cause to believe such person was driving or was in actual physical control of the motor vehicle within this state while under the influence of alcoholic beverages....
§ 316.1932(1)(a), Fla. Stat. (1997). Section 316.1932(1)(b)1. provides that "[t]he breath-alcohol level must be based upon grams of alcohol per 210 liters of breath." Section 316.1932(1)(b)2. addresses breath-alcohol tests and provides:
An analysis of a person's breath, in order to be considered valid under this section, must have been performed substantially according to methods approved by the Department of Law Enforcement. *98 For this purpose, the department may approve satisfactory techniques or methods. Any insubstantial differences between approved techniques and actual testing procedures in any individual case do not render the test or test results invalid.
Section 316.1932(1)(f)1. also addresses breath-alcohol tests:
The tests determining the weight of alcohol in the defendant's blood or breath shall be administered at the request of a law enforcement officer substantially in accordance with rules of the Department of Law Enforcement. Such rules must specify precisely the test or tests that are approved by the Department of Law Enforcement for reliability of result and case of administration, and must provide an approved method of administration, which must be followed in all such tests given under this section....
Further, section 316.1934(2) provides that test results are "admissible into evidence when otherwise admissible, and the amount of alcohol in the person's blood or breath at the time alleged" gives rise to certain presumptions. In particular, "[i]f there was at that time a blood-alcohol level or breath-alcohol level of 0.08 or higher, that fact is prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired" and "such person who has a blood-alcohol level or breath-alcohol level of 0.08 or higher is guilty of driving, or being in actual physical control of, a motor vehicle, with an unlawful blood-alcohol level or breath-alcohol level." § 316.1934(2)(c), Fla. Stat. (1997). The statute further provides that the presumptions do not prevent introduction of other evidence: "The presumptions provided in this subsection do not limit the introduction of any other competent evidence bearing upon the question of whether the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired." § 316.1934(2), Fla. Stat. (1997).
In Chapter 11-D, Florida Administrative Code, the FDLE has adopted rules implementing the implied consent law. See Fla. R. Admin. Code R. 11D-8.002-8.017. "Rules 11D-8.001 through 8.006 govern how the breath testing machines (the Intoxilyzer 5000) must be maintained and tested for accuracy in order to make breath test results admissible in evidence in a DUI case." State v. Friedrich, 681 So.2d 1157, 1160 (Fla. 5th DCA 1996). FDLE also has promulgated forms, including FDLE/ATP Form 16, for use in implementing the implied consent law.
After the State charged him with DUI, Lanoue filed a petition challenging Rule 11D-8.002(1), Rule 11D-8.006(2), and FDLE/ATP Form 16, adopted by reference in Rule 11D-8.003(7), as invalid exercises of delegated legislative authority. The petition contains the following assertions:
Petitioner possesses a Florida driver's license and has been arrested and charged with DUI. He was administered a breath test and the results of that test are admissible into evidence at his upcoming trial. Should he be found guilty of DUI, he will be subject to the penalties prescribed in Section 316.193, Florida Statutes. Petitioner's substantial interests are affected by the promulgated and unpromulgated rules and policies used by the FDLE in the implementation of the Implied Consent Program.
Lanoue thus alleged a real and sufficiently immediate injury in fact.
As to the second element of the standing test, "the general rule regarding the zone of interest element of the substantially affected test is that such element is met where a party asserts that a statute, or a rule implementing such statute, encroaches upon an interest protected by a statute or the constitution." Ward, 651 So.2d at 1238. "In the context of a rule challenge, the protected zone of interest need not be found in the enabling statute of the challenged rule itself." Ward, 651 *99 So.2d at 1238; see Florida Med. Ass'n, Inc. v. Department of Prof. Reg., 426 So.2d 1112, 1117-18 (Fla. 1st DCA 1983).
In this case, as explained above, the challenged rules implement the implied consent law. This is the statutory scheme pursuant to which Lanoue was given the breath-alcohol test. See State v. Bender, 382 So.2d 697, 699 (Fla.1980) (explaining that the purpose of the statutes "which direct law enforcement to use only approved techniques and methods is to ensure reliable scientific evidence for use in future court proceedings and to protect the health of those persons being tested, who by this statute have given their implied consent to these tests"). Because Lanoue has been charged with a crime, DUI, and has borne a driver's license suspensionboth addressed in this statutory schemehe has an interest within the zone of interest regulated by those statutes and rules. See Cole Vision, 688 So.2d at 407 (reversing hearing officer's determination that appellants did not have standing to challenge rule: "Because this rule purports to regulate appellants, and as a result potentially exposes them to legal action and monetary penalties, appellants have demonstrated that they are substantially affected by this rule."); State v. Rawlins, 623 So.2d 598, 600-01 (Fla. 5th DCA 1993) (affirming the trial court's determination that "Rawlins only has standing to challenge the constitutionality of the statute and the rules which pertain to the area of the St. Johns River in which he was cited for speeding"). See also State v. Benitez, 395 So.2d 514, 517 (Fla.1981) ("A party subject to criminal prosecution clearly has a sufficient personal stake in the penalty which the offense carries.").
Further, the statutory language itself contravenes the ALJ's conclusion that Lanoue failed to show that any error in calibrating the breath-testing machines could have affected his test result. As quoted above, the implied consent statute specifically provides that "[a]ny person who accepts the privilege ... of operating a motor vehicle within this state is, by so operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test," including a breath-alcohol test, if lawfully arrested for any offense committed while driving or in physical control of a motor vehicle. § 316.1932(1)(a), Fla. Stat. (1997) (emphasis added). In addition to being "approved," tests performed to determine breath-alcohol levels "must have been performed substantially according to methods approved by the Department of Law Enforcement." § 316.1932(1)(b)2. Therefore, regardless of Lanoue's actual test results, he has standing to bring his rule challenge because his test was presumably administered according to those "approved" FDLE procedures.
Based on the foregoing, the ALJ erred in finding that Lanoue lacked standing to bring the rule challenges raised in his petition. Although his claims may prove unsuccessful, he does have standing to raise them. Accordingly, we reverse and remand for further proceedings that portion of the order on appeal finding that Lanoue lacked standing to challenge Rule 118.002(1), Rule 11D-8.006(2), and FDLE/ ATP Form 16, adopted by reference in Rule 11D-8.003(7), as invalid exercises of delegated legislative authority.
In his petition, as mentioned above, Lanoue also challenged non-rule policies and statements utilized by FDLE regarding the means, methods, and criteria for analyzing and approving the source of the alcohol reference solution used to test the instruments. The petition asserts that these statements and policies have not been adopted or proposed as rules, contrary to section 120.54(1)(a). We find that the ALJ did not err in determining that Lanoue lacked standing to challenge these non-rule policies and statements. They are simply too remote and lack the direct impact present with the challenged existing rules. Lanoue thus failed to show he was substantially affected by these policies. *100 See § 120.56(4)(a), Fla. Stat. (1997) ("Any person substantially affected by an agency statement may seek an administrative determination that the statement violates s. 120.54(1)(a)."). Cf. Federation of Mobile Home Owners of Fla., Inc. v. Florida Manufactured Housing Ass'n, 683 So.2d 586, 592 (Fla. 1st DCA 1996) ("FMHA has standing to raise this challenge [to non-rule policies] because the prospectus is such a fundamental element of the mobile home park business that the absence of a procedure to obtain approval of amendments to the prospectus, and the confusion regarding the effective term of the prospectus, has direct impact on the business decisions and affects the substantial interests of FMHA's members."). Accordingly, we affirm this portion of the order on appeal.
AFFIRMED in part and REVERSED in part and REMANDED.
JOANOS and BENTON, JJ., CONCUR.