632 So.2d 593 (1993)
David Joseph MEHL, Petitioner,
v.
STATE of Florida, Respondent.
No. 80,492.
Supreme Court of Florida.
September 16, 1993.
Rehearing Denied December 23, 1993.
*594 Flem K. Whited, III and Barbara C. Davis, Daytona Beach, for petitioner.
Robert A. Butterworth, Atty. Gen. and Anthony J. Golden, Asst. Atty. Gen., Daytona Beach, for respondent.
PER CURIAM.
We have for review State v. Mehl, 602 So.2d 1383 (Fla. 5th DCA 1992), which certified two questions of great public importance:
Can the State introduce into evidence pursuant to section 316.1934 blood sample test[] results even though HRS has not adopted rules governing testing and maintenance of equipment approved for use in the testing of blood samples?
Can the State introduce into evidence pursuant to section 316.1934 blood sample test results conducted in accordance with the HRS rules promulgated as 10D-42.028, et seq.?

Id. at 1387. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
David Joseph Mehl was involved in an automobile accident near Orlando in which he and others were injured. Subsequently, an emergency room physician withdrew blood at the request of law officers, and the sample was sent to the crime labs of the Florida Department of Law Enforcement (FDLE). A machine known as a gas chromatograph revealed a blood-alcohol level of .10.
Mehl was charged with three counts of driving under the influence and causing serious bodily injury, one count of failure to appear, one count of reckless driving, and one count of leaving the scene of an accident. He subsequently attempted to suppress the blood-alcohol test results on grounds that the Florida Department of Health and Rehabilitative Services (HRS) had failed to adopt rules for the use, maintenance, calibration, testing, upkeep, and repair of gas chromatographs. Mehl also argued that this failure deprived him of his due process and equal protection rights.
At the suppression hearing, an FDLE forensic toxicologist testified that HRS indeed does not have standards for the use, maintenance, calibration, testing, upkeep, and repair of gas chromatographs. Rather, HRS issues permits only after an applicant has satisfactorily analyzed "proficiency samples" sent to the applicant by HRS. After a permit is issued, the applicant is sent proficiency samples every three months; and the permit is automatically terminated if the permittee unsatisfactorily analyzes two of four consecutive sets of samples. The person analyzing Mehl's blood sample had been qualified and licensed under this procedure.
The trial court granted the motion to suppress on grounds that this procedure did not meet the standards of section 316.1932(1)(f)1., Florida Statutes (1989).
The Fifth District reversed. The district court found that section 316.1932 was not applicable to this case; that the blood sample instead was taken pursuant to section 316.1933; and that the presumption of admissibility established in section 316.1934 must prevail here. The district court further held that HRS was not bound to adopt specific rules regarding maintenance and testing of equipment, but merely was required to "approve" an authorized method of testing, which it found that HRS had done. Finally, the district court held that, even if the trial court's order was correct, the trial court still should have determined if the test was admissible under the common law standard of Robertson v. State, 604 So.2d 783 (Fla. 1992).
We begin by recognizing that the various provisions of Florida's implied consent laws, §§ 316.1932-.34, Fla. Stat. (1989), are not a model of clarity. Here, the district court has seized upon the different wording of subsections 316.1932(1)(f)1. and 316.1933(2)(b), Florida Statutes (1989), to justify the distinction it has drawn.[1] However, we are not persuaded that this is what the legislature intended. The more proper approach, *595 we find, is to read these provisions in pari materia as expressing a unified legislative purpose, since all of the three provisions at issue here are part of a unified package of law. See Robertson, 604 So.2d at 789 n. 4.
In this light, we believe the more reasonable conclusion is that the legislature intended for HRS to "specify precisely the test or tests" that must be used as well as to "provide an approved method of administration which shall be followed in all such tests," see § 316.1932(1)(f)1., Fla. Stat. (1989), even in those instances where blood is involuntarily withdrawn by operation of subsection 316.1933(2)(b), Florida Statutes (1989). It therefore is incumbent upon HRS not merely to test particular machines, methods, or operators for accuracy, but also to specify the precise blood-alcohol tests and the method of administration approved for use in this state. We thus must determine whether these requirements have been met here.
Rule 10D-42.028 authorizes two procedures for the testing of blood for alcohol content: alcohol dehydrogenase and gas chromatography. This clearly meets the statutory requirement of specifying the approved test. However, Mehl contends that the regulations do not provide an approved method of administration. The State responds that under the rules a technician who wishes to qualify for a permit must submit to HRS the complete description of the procedure to be used and must satisfactorily analyze proficiency samples. The tests may only be performed by the permittee in a designated laboratory facility. Every three months, the permittee is given control samples to test to insure the accuracy of testing equipment and methodology. Each permit must be renewed annually, and unsatisfactory test results mandate termination of the permit.
Because HRS approves the methodology of the applicant and tests proficiency before issuing a permit, we conclude that HRS has met the statutory requirement of providing an approved method of administration. Therefore, the results of Mehl's blood test are not subject to suppression.
Notwithstanding our conclusion that HRS has sufficiently met the statutory requirements, we believe that the public as well as those who may wish to obtain a testing permit should be apprised in advance of all approved methods of administering the test. Therefore, beginning at 12:01 a.m. on April 1, 1994, the State shall not be allowed the benefit of the presumptions established in section 316.1934, Florida Statutes (1989), unless (a) the state has established reasonably definite rules specifying the precise methods of blood alcohol testing that are approved for use in this State, and (b) the State and its agencies substantially comply with these rules. Of course, even when the presumption is not available, the State should still have the benefit of the Robertson analysis, upon a proper request.
The result reached by the district court below, but not its entire analysis, essentially is in harmony with what we hold here. Accordingly, both questions are answered in the affirmative subject to the qualifications herein. The decision under review is approved, and this cause is remanded to the trial court for further proceedings consistent with our views.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Subsection 316.1932(1)(f)1. provides in pertinent part:

The tests determining the weight of alcohol in the defendant's blood shall be administered at the request of a law enforcement officer substantially in accordance with rules and regulations which shall have been adopted by the Department of Health and Rehabilitative Services. Such rules and regulations shall be adopted after public hearing, shall specify precisely the test or tests which are approved by the Department of Health and Rehabilitative Services for reliability of result and facility of administration, and shall provide an approved method of administration which shall be followed in all such tests given under this section.
Subsection 316.1933(2)(b) provides:
A chemical analysis of the person's blood to determine the alcoholic content thereof must have been performed substantially in accordance with methods approved by the Department of Health and Rehabilitative Services and by an individual possessing a valid permit issued by the department for this purpose. The Department of Health and Rehabilitative Services may approve satisfactory techniques or methods, ascertain the qualifications and competence of individuals to conduct such analyses, and issue permits which will be subject to termination or revocation at the discretion of the department.