732 So.2d 350 (1999)
STATE of Florida, Appellant,
v.
Michael Randy MILES, Appellee.
No. 97-3606.
District Court of Appeal of Florida, First District.
January 27, 1999.
Rehearing Denied April 16, 1999.
*351 Robert A. Butterworth, Attorney General, and Stephen R. White, Assistant Attorney General, Tallahassee, for Appellant.
Barry W. Beroset of Beroset & Keene, Pensacola, for Appellee.
JOANOS, J.
The State of Florida appeals an order in which the trial court ruled that the state will not be entitled to a presumption pursuant to section 316.1934, Florida Statutes (1995), in its prosecution of appellee on charges of driving under the influence of alcohol (DUI)/manslaughter, vehicular homicide, DUI causing personal injury, and DUI causing property damage. We affirm the trial court's ruling, with the proviso that the state will be entitled to the statutory presumptions of impairment subject to the qualifications outlined below. In addition, we certify a question of great public importance to the Florida Supreme Court.
The issue in this case concerns one of the rules promulgated by the Florida Department of Law Enforcement (FDLE) to implement the provisions known as Florida's implied consent law. "The implied consent law consists of sections 316.1932, 316.1933, and 316.1934, Florida Statutes, which essentially require all persons accepting a license to drive in Florida to consent to a blood-alcohol test upon being arrested for driving under the influence." See Robertson v. State, 604 So.2d 783, 789, n. 4 (Fla.1992). Appellee, the defendant in the criminal prosecution, filed a motion to suppress or alternative motion in limine to exclude the results of his blood-alcohol test due to the alleged inadequacy of the FDLE regulations for the collection of blood samples. The challenged rule, Florida Administrative Code Rule 11D-8.012, provides:
11D-8.012 Blood SamplesLabeling and Collection.
(1) All blood sample vials or tubes shall be labeled with the following information:

*352 (a) Name of person tested;
(b) Date and time sample collected;
(c) Initials of personnel collecting the sample.
(2) Cleansing of the person's skin in collecting of the blood sample shall be performed with a non-alcoholic antiseptic solution.
(3) Blood samples shall be collected in a vial or tube containing an anticoagulant substance. Said vial or tube shall be stoppered or capped to prevent loss by evaporation.
Appellee maintained the rule promulgated by the FDLE failed to ensure the scientific reliability of the test results, in that Rule 11D-8.012 fails to provide for proper collection, storage, and transportation of blood samples.[1]
At the hearing on appellee's motion to suppress or to exclude the blood-alcohol test results, an FDLE expert witness testified that Rule 11D-8.012 is brief but adequate. According to the FDLE expert, it is not necessary to provide a methodology for handling a blood sample until such time as it is tested, because the principles for proper handling, transportation, and storage of blood are universally known. The defense expert disagreed, noting, among other things, that the rule does not require the presence of a preservative, and, although an anticoagulant is mentioned in the rule, the rule does not specify an amount of anticoagulant. The defense expert explained that a preservative in the sample prevents change in alcohol concentration, and prevents chemical oxidation of the blood. In the opinion of the defense expert, Rule 11D-8.012 is inconsistent with the core policies of the Florida implied consent law, because the blood collection, storage, and transportation regulations do not provide the scientific guidance necessary to ensure scientific reliability of the test.[2]
The only question raised by appellee's motion to suppress or alternative motion to exclude blood-alcohol test results was whether the rule relating to preservation of blood samples drawn pursuant to section 316.1933, Florida Statutes (1995), adequately protects the due process rights of those persons charged with driving under the influence of alcohol.[3] In this regard, the trial court found the rule adopted by the FDLE for collection of blood samples is inadequate to address the core policies of the state to ensure preservation of a blood sample which will result in an accurate analysis. Based on this finding, the trial court ruled the state was not entitled to a presumption under section 316.1934, Florida Statutes. The trial court also denied appellee's motion to suppress or alternative motion to exclude the blood-alcohol test results. Rather, the court ruled that at the trial of this cause, the parties will be permitted to establish or discredit the accuracy of the blood-alcohol test results in accordance with the principles articulated in Robertson v. State, 604 So.2d 783 (Fla.1992).
In Robertson, the supreme court analyzed the implied consent law with particular focus on the principles set forth in *353 State v. Bender, 382 So.2d 697 (Fla.1980). The court explained

Bender noted that, prior to the adoption of the implied consent law, scientific test results for intoxication were admissible
if a proper predicate established that (1) the test was reliable, (2) the test was performed by a qualified operator with the proper equipment and (3) expert testimony was presented concerning the meaning of the test.
See Robertson, 604 So.2d at 789, quoting Bender, 382 So.2d at 699. The former procedure required the state to establish the Bender predicate in every case. "If the state failed to do so, the evidence was not admissible." See Robertson, 604 So.2d at 789. Under the implied consent law, if the state follows the prescribed "checklist," a trial court's determination that the state has established the predicate is presumed correct. Although the defense still has the opportunity to rebut the presumption created by the statute, the burden would rest upon the defense to prove the point. See id., at 789, n. 6.
Robertson also instructs that the implied consent law does not constitute the only means by which blood-alcohol test results may be admitted into evidence. In the event the state lays the three-pronged predicate described in Bender, and successfully withstands any and all defense rebuttal, the evidence is deemed scientifically reliable, hence admissible. After admissibility has been determined in accordance with the common law principles, it seems, and we hold, that the legislatively created presumptions with respect to impairment are applicable to the blood-alcohol test results which have been determined to be admissible into evidence. However, because of the importance of this issue which is not entirely clear, we certify the following to the Florida Supreme Court as a question of great public importance:
Where the state lays the three-pronged predicate for admissibility of blood-alcohol test results in accordance with the analysis set forth in Robertson v. State, 604 So.2d 783 (Fla.1992), thereby establishing the scientific reliability of the blood-alcohol test results, is the state entitled to the legislatively created presumptions of impairment?
Accordingly, the trial court's ruling is affirmed, subject to the qualifications expressed herein.
LAWRENCE, J., CONCURS.
WOLF, J., CONCURS IN PART AND DISSENTS IN PART WITH WRITTEN OPINION.
WOLF, J., concurring in part and dissenting in part.
I dissent from that portion of the majority opinion affirming the trial court's decision; I would also certify an additional question to the supreme court. Section 316.1932, Florida Statutes, does not require the Florida Department of Law Enforcement (department) to adopt rules relating to preservation of blood samples, nor does the failure to adopt such rules constitute a denial of due process. See State v. Bender, 382 So.2d 697, 700 (Fla. 1980). I do believe, however, that some confusion has been caused by the case of Mehl v. State, 632 So.2d 593 (Fla.1993); therefore, I would certify the following question to the supreme court:
WHETHER EITHER SECTION 316.1932(1)(f)1, FLORIDA STATUTES, OR CONSTITUTIONAL DUE PROCESS REQUIRES THE FLORIDA DEPARTMENT OF LAW ENFORCEMENT TO ADOPT RULES PERTAINING TO THE PRESERVATION OF BLOOD SAMPLES TAKEN PURSUANT TO SECTION 316.1933, FLORIDA STATUTES?
I concur, however, in that portion of the opinion that allows the state to utilize the statutory presumption regarding intoxication pursuant to Robertson v. State, 604 So.2d 783 (Fla.1992), where it has presented *354 independent proof of the accuracy of the testing procedures.
The trial court heard testimony that failure to properly preserve blood samples taken from a defendant could result in an inaccurate alcohol reading. It was the Department of Law Enforcement's position that the statute did not require adoption of a rule relative to storage of blood because it was common knowledge that blood samples should not be overheated. The chemist for the department testified that the department did not want to create a "monster" rule, and therefore, it did not address the obvious. The trial court agreed that the statute in question does not specifically require that rules be adopted for the collection, storage, or transportation of blood samples. While the trial court did not directly rule on the constitutionality of the statute or the rule in question, the court did, however, find that the failure to adopt rules resulted in a denial of due process. The trial court concluded, therefore, that the state would not be entitled to any of the presumptions contained in section 316.1934, Florida Statutes, even if it independently established a proper predicate for the admission of the test result.
A careful reading of the case law concerning the duty to adopt rules in this area does not support the trial court's position concerning the state's failure to adopt rules or the remedy for failing to do so. The statutory duty is contained in section 316.1932(1)(f)1., Florida Statutes, which provides in pertinent part as follows:
The tests determining the weight of alcohol in the defendant's blood or breath shall be administered at the request of a law enforcement officer substantially in accordance with rules of the Department of Law Enforcement. Such rules must specify precisely the test or tests that are approved by the Department of Law Enforcement for reliability of result and case of administration, and must provide an approved method of administration which must be followed in all such tests given under this section.
In State v. Bender, 382 So.2d 697 (Fla. 1980), the respondent argued that the presumption statute was unconstitutional and the failure of the department to incorporate the manufacturer's procedure for operation and maintenance of the breathalyzer within its rules constituted a denial of due process. The supreme court (1) held the statute adopting the statutory presumptions was constitutional; (2) stated that test results are admissible and statutory presumptions are applicable if compliance with the statute and administrative rules is accomplished; (3) determined that application of the statutory presumptions did not deny a defendant due process, because "[t]he presumptions are rebuttable and a defendant may attack the reliability of the testing procedures"; and (4) determined that the failure to adopt certain rules relating to the testing procedure did not constitute a denial of due process because "the respondents clearly have the right in their individual proceedings to attack the reliability of the testing procedures or operator's qualifications." Id. at 700.
In the instant case, we have the same type of claim as in Bender, that the failure to adopt rules relating to a critical portion of the testing process results in the denial of due process. In Bender, the court was dealing with operation and maintenance of the actual testing machines. In the instant case, we are dealing with matters related to the chain of custody. While the evidence in this case indicates that it would probably be a better public policy decision to adopt rules relating to storage or preservation of blood samples, it is not our job to determine what rules should be adopted for the public benefit, that is within the province of the legislative branch. It is also not our job to second guess the department on the wisdom of failing to adopt the aforementioned rules. We must address the constitutionality of the present statutory and regulatory scheme. I see no reason to treat the failure to adopt rules relating to the preservation of the blood *355 samples any differently than the failure to adopt rules relating to the maintenance of the machines. As in Bender, the defendant in this case would have on remand an opportunity to attack the reliability of the testing procedures, notwithstanding the statutory presumptions.[4] There is no material difference between the constitutional attack rejected by the court in Bender and the attack raised by appellee in the instant case. Therefore, there is no denial of due process.
The case of Mehl v. State, 632 So.2d 593 (Fla.1993), causes some confusion in this area. There are some perplexing aspects of Mehl. In Mehl, the supreme court addressed the sufficiency of the rulemaking undertaken by the Department of Health and Rehabilitative Services (the predecessor agency responsible for overseeing the tests) pursuant to section 316.1932(1)(f)1. The supreme court found,
Because HRS approves the methodology of the applicant and tests proficiency before issuing a permit, we conclude that HRS has met the statutory requirement of providing an approved method of administration. Therefore, the results of Mehl's blood test are not subject to suppression.
Id. at 595.
Notwithstanding the fact that the supreme court found the rule to be in compliance with the statute and found neither the existing statute nor the existing rule to be unconstitutional, the court stated,
Notwithstanding our conclusion that HRS has sufficiently met the statutory requirements, we believe that the public as well as those who may wish to obtain a testing permit should be apprised in advance of all approved methods of administering the test. Therefore, beginning at 12:01 a.m. on April 1, 1994, the State shall not be allowed the benefit of the presumptions established in section 316.1934, Florida Statutes (1989), unless (a) the state has established reasonably definite rules specifying the precise methods of blood alcohol testing that are approved for use in this State, and (b) the State and its agencies substantially comply with these rules. Of course, even when the presumption is not available, the State should still have the benefit of the Robertson analysis, upon a proper request.
Id. (emphasis added). The alleged rules in the instant case do not deal with the actual administering of the test. Therefore, the mandate for rulemaking found in Mehl would be inapplicable.
It is unclear to me under what authority the supreme court in Mehl ordered further rulemaking. It is my understanding that a court in reviewing rules may find or determine that a rule is an invalid exercise of delegated legislative authority as that is defined in section 120.52(8), Florida Statutes, or may find that adoption of a rule is specifically mandated by the statute. If the court finds the adopted rule to be invalid, the remedy is to strike the rule; if the statute specifically requires further rulemaking, the court may order the agency to comply with the statutory mandate. In Mehl, the court took neither action before it ordered the adoption of additional rules. I am aware of no authority which allows the judicial branch to require rulemaking under these circumstances. The opinion of the court in Mehl appears to invade the province of the Legislature.
Notwithstanding my concern about what Mehl did, it is also important to understand what Mehl did not do. The decision did not find that the statutory language required the adoption of further rulemaking; it did not specifically make a determination of the unconstitutionality of either the statute or the rule; and it did not overrule the holding in Bender, that the failure to adopt rules specifically outlining each portion of the collection and testing procedures did not render the statute unconstitutional. *356 Finally, while Mehl required the adoption of additional rules, it did not retroactively deprive the state of the statutory presumption for the failure to adopt additional rules. It is this last point which is significant in the context of the remedy fashioned by the trial court in this case.
There are two presumptions contained in section 316.1934, Florida Statutes. There is an expressed presumption concerning intoxication and an implied presumption regarding admissibility. See Bender, supra at 699. In Bender, the court stated, "None of the statutory presumptions can apply in the absence of compliance with the administrative rules." Id. at 700. It is important to note that the Bender court was talking about failure to comply with existing rules. In Robertson, supra, and State v. Strong, 504 So.2d 758 (Fla.1987), the court was also dealing with alleged violations of existing statutes and rules. The only case dealing with the failure to adopt rules is Mehl. The Mehl court, however, did not retroactively apply a prohibition against utilizing the statutory presumption. I also feel that any requirement concerning the adoption of additional rules should not act to retroactively deprive the state of the statutory presumption.
In addition, if the state is required to prove through a proper predicate that "(1) the test was reliable and (2) the test was performed by a qualified operator with the proper equipment" as required by Robertson, supra at 789, there is no valid reason not to allow the state to benefit from the presumption of intoxication contained within the statute.
NOTES
[1] The rules implementing the implied consent law formerly were promulgated by the Department of Health and Rehabilitative Services. Effective July 1, 1992, the legislature transferred the implied consent program to the FDLE. See Ch. 92-58, § 20, Laws of Fla. The rules promulgated by the FDLE became effective October 31, 1993.
[2] The core policies of the implied consent law are to ensure scientific reliability of the tests, and to protect the health of test subjects. See Robertson, 604 So.2d at 789, n. 5.
[3] In view of the narrow issue for determination, the trial court did not receive evidence regarding the reliability of the testing procedure employed in this case. Although the absence of evidence of the underlying facts distinguishes this case from Mehl v. State, 632 So.2d 593 (Fla.1993), we conclude the trial court's ruling was consistent with the principles pronounced in Mehl.
[4] It should be noted that at this stage of the trial court proceeding, there was no showing that the blood sample was improperly stored or preserved.