WOLF, C.J.
We have before us two consolidated cases involving the admissibility of breath test results in “Driving While Intoxicated” cases. The trial court heard a consolidated motion to suppress the breath test results for a number of similarly situated defendants including Scott Jenkins (petitioner) and James Howard (appellant).[1] The crux of the motion to suppress involved the validity of the source of an alcohol testing solution used by the Florida Department of Law Enforcement (FDLE) to test the accuracy of breath testing machines (commonly referred to as “breathalyzers”), and the FDLE’s creation and use of a form, the Certificate of Accuracy (COA), which contained standards for the proper concentrations of these alcohol testing solutions. There are two issues we must address: (I) Whether FDLE was required to engage in the rule-making process pursuant to chapter 120, Florida Statutes, the Administrative Procedures Act (APA), when it designated a sole source for the alcohol solution and created and used the COA form, and (II) if FDLE was required to promulgate a rule, what is the proper remedy when FDLE promulgated the COA form as a rule through the procedures delineated in chapter 120, Florida Statutes, after the administration of the breathalyzer tests in these cases, but prior to the challenges in the instant cases being heard.
We determine that the designation of a sole source supplier for the alcohol testing *1221 solution did not constitute an unpromulgat-ed rule, but the creation and use of the COA form did constitute an unadopted rule as defined in the APA. We also determine that under the circumstances of these cases and the fact the COA form was properly adopted prior to the convictions of Jenkins or Howard, there is no valid reason to deny the State the ability to utilize the test results and the statutory presumption of intoxication related to the results of the breath tests in these cases.

JENKINS’ CASE

On December 3, 1998, Scott Jenkins was arrested for driving under the influence (DUI), driving in violation of license restrictions (which limited his driving to business purposes only), and leaving the scene of an accident with property damage (after he collided with a yield sign). Ultimately, Jenkins entered a plea of no contest to driving in violation of license restrictions and leaving the scene of an accident. The matter proceeded to a trial in county court on the charge of DUI. Part of the evidence against Jenkins was a breath test result from an Intoxilyzer 5000, a breath analysis machine, which tested Jenkins at .180 and .179 grams per 210 liters of breath, which is well over the .08 limit.[2]
A consolidated hearing was held on a motion to suppress the breath test results of Jenkins and other DUI defendants based on FDLE’s failure to properly legitimize the use of the COA form through chapter 120 rule-making procedures. The trial court denied the motion, finding that FDLE’s actions in creating parameters for the alcohol reference solution (AES) used in inspecting the breath testing instruments and selecting an outside laboratory to provide the testing solution were not “rules” requiring chapter 120 rule-making procedures.
After a bench trial, Jenkins was found guilty of DUI. Specifically, the court found that Jenkins was driving with a breath alcohol level of more that .08 and that beyond a reasonable doubt Jenkins’ normal faculties were impaired. The court emphasized, however, that the presumption of impairment based on the breath test was a factor in its determination that Jenkins was guilty.
Jenkins timely appealed his conviction to the circuit court. On August 30, 2001, the circuit court entered a written order upholding the ruling of the trial court-as to Jenkins’ appeal. The issues addressed by the circuit court were
(1) Whether creation and use of the COA form by FDLE between January 1, 1997, and July 6, 1999, constituted a rule and an invalid exercise of rule making;
(2)Whether the trial (county) court erred in admitting the results of the breath test based upon purported violations of the APA; and
(3) Whether defendant is entitled to a new trial.
The circuit court answered all of these questions in the negative. In finding that the selection of an outside provider and the use of the COA form were not actions taken pursuant to unpromulgated rules, the circuit court relied on the case of La- *1222 noue v. Department of Law Enforcement, 751 So.2d 94 (Fla. 1st DCA 1999), and concluded,
In that the actions of [FDLE] did not rise to the level of being classified as being an unpromulgated rule, the trial court properly found that there was not an illegal exercise of delegated legislative authority and the Motion to Suppress was properly denied. The results of the breath tests were therefore legally admitted into evidence. Having reached that opinion, there is competent substantial evidence to support the finding of the trial court that the State proved beyond and to the exclusion of all reasonable doubt that the Defendant [Jenkins] was guilty of DUI.
Jenkins filed a petition for writ of certiora-ri in this court seeking review of the circuit court’s appellate opinion.

HOWARD’S CASE

On June 26, 1999, while parked at a hotel, Howard was arrested and charged with DUI and driving with a suspended or revoked license. There were no field exercises performed, but Howard’s breath test at the Santa Rosa County jail registered as 0.158 and 0.160 on the Intoxñyzer 5000 machine. Howard entered a plea of no contest to the charges and the State stipulated that the ruling on the motion to suppress was dispositive in his case of whether he was driving while under the influence of alcohol. The trial court sentenced Howard and entered an order certifying two questions to this court as being of great public importance:

Question I:

DID THE FLORIDA DEPARTMENT OF LAW ENFORCEMENT (FDLE) VIOLATE CHAPTER 120 F.S. BY FAILING TO ENGAGE IN PROPER RULE MAKING PROCEDURES BY USING AN INTERNAL CERTIFICATE OF ASSURANCE BETWEEN JANUARY 1, 1997 AND JULY 6, 1999 AND PRIOR TO ADOPTING THE CERTIFICATE OF ASSURANCE (COA) FOR ALCOHOL [REFERENCE] SOLUTIONS?

Question II:

DOES THE FAILURE OF FDLE TO PROPERLY ADOPT RULES REGULATING ALCOHOL REFERENCE SOLUTIONS [ARS] AS RELATED TO THE MONTHLY TESTING OF BREATH TESTING DEVICES AND THE ANNUAL DEPARTMENT INSPECTIONS OF SUCH MACHINES RENDER THE BREATH TESTS OBTAINED BETWEEN JANUARY 1, 1997 AND JULY 6, 1999, INADMISSIBLE AS BEING BASED UPON IMPROPER EXERCISE OF AUTHORITY DELEGATED BY THE LEGISLATURE TO REGULATE THE ALCOHOL BREATH TESTING PROGRAM AS RELATES TO EVI-DENTIARY BREATH TEST RESULTS BEING USED IN FLORIDA IN LIGHT OF STATE V. MILES?
We restate the certified questions as set forth in the first paragraph of this opinion, identified as Issues I and II.

TESTING OF BREATHALYZER MACHINE

Before analyzing the issues before us we need to understand how FDLE tested the accuracy of the breathalyzer machines during the period in question. In order for a defendant’s breath test results to be admissible as evidence in a DUI prosecution, the tests must be performed *1223 in compliance with the statutes and administrative rules. See State v. Friedrich, 681 So.2d 1157, 1163 (Fla. 5th DCA 1996). In order to qualify for the statutory presumption of impairment based on a breathalyser result, FDLE is required to inspect and maintain each breath testing machine to ensure its accuracy. See § 316.1932(l)(f)l., Florida Statutes (1999) (requiring FDLE to establish rules for the “reliability of result and ease of administration”). These inspections are done either by FDLE or local law enforcement departments. Currently, each breath testing machine is checked using “alcohol reference solutions” (ARS) produced in different levels of alcohol concentration such as .05, .08, or .20 to mimic acceptable or unacceptable levels of alcohol as set forth in sections 316.193 through 316.1934, Florida Statutes (1999). These solutions are used to assure that each breath machine accurately detects the level of alcohol present in a breath sample from a motorist accused of DUI. If the machine reads greater than ± .005 at the .08 and .05 levels, or greater than ± .010 at the .20 level, the machine is not “in compliance” and the results of breath tests from that machine cannot be offered as evidence in criminal trials. Fla. Admin. Code R. 11D-8.002(1) and 11D-8.006 (1999).
Prior to January 1, 1997, each local law enforcement department was required to make its own ARS using alcohol stock solution prepared by FDLE or to use a solution from a source approved by FDLE. Fla. Admin. Code R. llD-8.006(2) (1997). During this time, the stock solution used for creating the ARS was produced by FDLE pursuant to the directives of Tom Wood, Senior Crime Laboratory Analyst with FDLE’s Alcohol Testing Program. Tom Wood set the allowable parameters of the chemical make-up or concentrations for these stock solutions. The stock solutions were then sent to local law enforcement personnel or others who in turn used these stocks for creating alcohol reference solutions. The stock solution would be diluted by the testing individual to obtain the ARS to be used in checking the accuracy of the breath machine.
In 1997 the administrative rules were changed to allow FDLE to obtain solutions from an outside vendor. FDLE chose Guth Laboratories, Inc. (Guth) to provide the ARS for all testing, thereby eliminating the need for FDLE and local agencies to create a stock solution and then dilute it, as was previously required. Tom Wood devised a COA form which stated that he had tested the Guth ARS, that he found it complied with the criteria he created, and that it was approved for testing the breath machines.
In November 1998, FDLE began proceedings to amend the rules to include additional testing procedures and to adopt Tom Wood’s COA form implementing those procedures. Although comments were received from two sources on matters unrelated to the appeal, there were no objections to the concentrations previously utilized for the ARS. The rule amendments were adopted in June 1999, with an effective date of July 7, 1999. The COA form which was created by Tom Wood and being used by FDLE was officially adopted through chapter 120 rule-making procedures. Fla. Admin. Code R. 11D-8.0035(2)(b) (1999).

MOTION TO SUPPRESS

In July 1999 a number of DUI defendants filed a consolidated motion to suppress evidence of breath tests results. The consolidated motion was filed on behalf of Howard, Jenkins, and others who *1224 had submitted to breath tests in Santa Rosa County, Florida from January 1, 1997, through July 6, 1999. The motion sought to suppress the results of all breath tests obtained during that period based upon the alleged failure of FDLE to properly adopt and promulgate rules regulating the use of breath testing devices in accordance with chapter 120, Florida Statutes, the APA.[3] Specifically, the motion was based upon the failure of FDLE to properly adopt and promulgate rules regulating the source of the ARS used to test the breath analysis machines and the use of the COA form. The DUI defendants argued that the designation of the source and use of the COA form was a rule within the meaning of the APA, found in section 120.52(15), Florida Statutes (1999). The motion requested the following relief relevant to this appeal:
a. The FDLE’s statements and policies with respect to the selection and approval of a supplier of ARS to be utilized in all inspections of all evidential breath testing instruments in Florida constitute a rule, and the FDLE is in violation of § 120.54(l)(a), Florida Statutes, for failure to comply with the rulemak-ing requirements of the Administrative Procedure Act, and;
b. The FDLE’s statements and policies regarding the methodology and criteria it utilizes to approve ARS supplied by outside entities, as currently set forth by contract, constitute rules, and the FDLE is in violation of § 120.54(l)(a), Florida Statutes, for failure to comply with the rule-making requirements of the Administrative Procedure Act ....
At the hearing, the testimony of Tom Wood was presented regarding the ARS procedure utilized prior to 1997. He testified as to how the stock solutions were prepared and tested, and he testified that the procedures being used by Guth were essentially the same as he had employed in creating the stock solutions. The only real difference he noted was that prior to 1997, FDLE allowed a wider range for concentrations, but in the contract with Guth he narrowed the concentration range for the ARS to be used after 1997. He testified that the results were scientifically reliable and that the procedures used from January 1997 were substantially the same as the procedures in the rule adopted in June 1999, which became effective on July 7, 1999. There was no evidence presented challenging Tom Wood’s conclusions that the procedures utilized during the period in question were substantially the same as the ones adopted by rule or that the procedures utilized were scientifically reliable.

WAS USE OF THE COA FORM AND DESIGNATION OF A SOLE SOURCE FOR THE ARS AGENCY ACTION PURSUANT TO AN UN-PROMUGATED RULE?

Pursuant to section 120.54(3), Florida Statutes (1999), prior to the adoption of a rule the agency must comply with certain requirements such as providing notice, holding hearings to allow input from interested parties and the public, filing, and publication. Failure to comply with these requirements renders an action or policy an unpromulgated rule or an invalid exercise of delegated legislative authority. *1225 § 120.52(8)(a), Florida Statutes (1999).[4] See also Dep’t of Natural Res. v. Wingfield Dev. Co., 581 So.2d 193, 196 (Fla. 1st DCA 1991). We must, therefore, determine whether the creation and use of the COA form or the designation of Guth as the source was an invalid exercise of delegated authority under the APA for failure to promulgate a rule.
Section 120.52(15), Florida Statutes (1999), defines a rule as
each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendment or repeal of a rule....
Outside the DUI testing context, courts have determined on a fact-specific basis whether agency action requires rule promulgation. An agency statement or policy is a rule if its effect requires compliance, creates certain rights while adversely affecting others, or otherwise has the direct and consistent effect of law. See Fla. Dep’t of Revenue v. Vanjaria Enters., Inc., 675 So.2d 252, 254-255 (Fla. 5th DCA 1996) (affirming judgment for taxpayer, finding assessment procedure was unpro-mulgated rule); Balsam v. Dep’t of Health & Rehabilitative Servs., 452 So.2d 976, 977-978 (Fla. 1st DCA 1984) (holding any agency statement is a rule if it creates certain rights and adversely affect others, or if it requires compliance).
In Vanjaria, DOR’s training manual contained an audit method for determining tax exemptions for multiple-use properties. After reviewing the effect of the procedure and the evidence provided by DOR on the taxpayer, the court affirmed the trial court’s finding that the procedure was a rule because of its general applicability. Id. at 256. Similarly, in Department of Highway Safety & Motor Vehicles v. Schluter, 705 So.2d 81 (Fla. 1st DCA 1997), this court clarified that set policies of general applicability were, in fact, rules. Here, it is clear that the accuracy of the ARS affects the accuracy of the breathal-zyer which, in turn, affects the rights of DUI defendants, just as the audit in Van-jaria affected the taxpayer. Moreover, the testimony of Tom Wood, the Department representative, demonstrated that the contents of the COA form included definitive policies of general application utilized by FDLE in determining the accuracy of the stock solutions. This policy was not incipient, and it affected the substantial rights of the parties. Thus the COA form meets the definition of a rule under chapter 120.[5] See Dep’t of Transp. v. Blackhawk Quarry of Fla., Inc., 528 So.2d 447 (Fla. 5th DCA 1988).
*1226 We find that the selection of a contractor to supply the ARS was a one-time event with no general applicability, and therefore, that action does not meet the statutory definition of a rule. See Schluter, 705 So.2d at 82. This court was asked to address a similar question in Lanoue v. Florida Department of Law Enforcement, 751 So.2d 94 (Fla. 1st DCA 2000). The county and circuit courts in the instant case relied upon Lanoue to determine that the designation of an outside provider was not a rule, and thus, that action did not require chapter 120 rule-making procedures. There, the appellant appealed the suspension of his driver’s license. As part of his challenge, Lanoue attacked the means, methods, and criteria for analyzing and approving the source of the ARS used to calibrate the breath-testing machines, alleging that these statements and policies were actually rules subject to section 120.54. Although the issue was whether Lanoue had standing to attack these policies, this court found that the policies regarding ARS were non-rules which did not have direct impact on Lanoue:
Lanoue also challenged non-rule policies and statements utilized by FDLE regarding the means, methods, and criteria for analyzing and approving the source of the alcohol reference solution used to test the instruments. The petition asserts that these statements and policies have not been adopted or proposed as rules, contrary to section 120.54(l)(a). We find that the ALJ did not err in determining that Lanoue lacked standing to challenge these non-rule policies and statements. They are simply too remote and lack the direct impact present with the challenged existing rules. Lanoue thus faded to show he was substantially affected by these policies.
Id. at 99-100. We note, however, Lanoue does not address the issue of whether the use of the COA form constituted action pursuant to an unpromulgated rule. Thus, in summary, we hold that the creation and use of the COA form in this case did constitute action pursuant to a “rule” as defined by the APA, but that the designation of Guth as the source of the ARS was not action pursuant to a “rule.”

WHAT ARE THE REMEDIES FOR A VIOLATION OF CHAPTER 120?

There are a plethora of cases dealing with blood, breath, and urine testing for alcohol content and the necessity for FDLE to adopt rules. The overwhelming majority of these cases challenge the presumption of intoxication under section 316.1934, Florida Statutes, because the agency failed to provide for sufficient procedures to insure the reliability of breath, urine, or blood tests as required under section 316.1932. See e.g., State v. Bodden, 27 Fla. L. Weekly D2382, — So.2d -, 2002 WL 31421575 (Fla. 2d DCA Oct 30, 2002), certification granted, SC03-622 (Fla. Mar 28, 2003) (holding FDLE was required to adopt rules governing collection, preservation, and analysis of urine); State v. Miles, 732 So.2d 350 (Fla. 1st DCA 1999) (Miles I), quashed in part, affirmed in part, 775 So.2d 950 (Fla.2000) (Miles II) (holding rule 11D-8.012(3), Florida Administrative Code, promulgated by the FDLE codifying procedures for handling blood samples as delegated in the Implied Consent Law, was inadequate because it failed to insure the reliability of blood test results). In contrast, in the instant case the challengers argue that the procedures utilized by the agency were so solidified that the agency should have adopted them as rules under chapter 120.
Jenkins and Howard argue that Miles II precludes the State from utilizing the pre *1227 sumption of impairment contained in the statute because FDLE failed to adopt the COA form by rule. We reject this argument and distinguish Miles legally and factually. First, Miles II stands for the proposition that the State is not entitled to the presumption of impairment where there is violation of the implied consent law found in sections 816.1932-316.1934, Florida Statutes. Miles II 775 So.2d at 955. There the supreme court held that rule 11D-8.012(3), relating to the labeling and sampling of blood, was inadequate because it failed to insure the reliability of blood test results. Id. at 955. The question in Miles I and Miles II was not whether FDLE was acting pursuant to an unpromulgated rule as in this case, but whether the promulgated rules regarding blood sampling and preservation were sufficient to protect the due process rights of those persons charged with driving under the influence of alcohol. Miles I, 732 So.2d at 352. Here, Jenkins and Howard are explicitly requesting that this court find use of the COA form to be a violation of the APA rather than a violation of chapter 316. Accordingly, their relief should be that prescribed by chapter 120, the APA, rather than invalidation of the presumption of impairment as occurred in Miles II due to a violation of chapter 316.
The facts in Miles are also factually distinguishable from this case. The blood specimen in Miles remained unrefrigerated for fourteen days prior to testing and the integrity of the samples could have been compromised. An expert testified that the blood alcohol content of a blood sample may be affected by a sample’s exposure to heat or by the presence of bacteria. Miles II, 775 So.2d at 951. The evidence in this case did not similarly impugn the integrity of any breath samples. In fact, the only testimony was that the procedures used before and after the promulgation of the COA form were scientifically reliable.[6]
We find that the case which the county and circuit courts relied upon, Wissel v. State, 691 So.2d at 507, is more instructive. There, the Second District addressed a somewhat similar question — whether FDLE was required to adopt rules regarding the remixing of the AES from the stock solutions used to test the breath machines. In Wissel, the defendant argued to the trial court that there were no properly adopted rules or regulations that defined the mixture, specified procedures on how to mix or produce the ARS, specified the type of glassware to utilize, provided directions on how to clean such glassware, or designated the source of the stock solution. Id. at 508. The trial court certified a question to the appellate court in regard to the issue of whether FDLE’s procedures in preparing the stock solution used to test breath machines should be promulgated as rules pursuant to chapter 120 of the Florida Statutes. The appellate court answered the question in the negative:
The certified question posed to us essentially asks whether every step, aspect or *1228 procedure employed in the simulation tests used to inspect breath test instruments ... must be expressly prescribed by rule or regulation required by section 316.1932(l)(f)l and adopted pursuant to chapter 120, The Florida Administrative Procedures Act. We hold that procedures that are implicit and incidental to procedures otherwise explicitly provided for in a properly adopted rule or regulation do not require further codification by a further adopted rule or regulation. In our opinion to hold otherwise belies statutory intent and/or common sense.
We likewise conclude that appellant’s attack, based on the lack of a rule or regulation to cover every step of the testing procedures for breath test instruments, is not only speculative and theoretical, but also hyper-technical.
Id. at 507-508 (citing State v. Friedrich, 681 So.2d 1157 (Fla. 5th DCA 1996)).
In Friedrich, cited in Wissel, the appellate court was faced with two certified questions similar to the ones posed in this case:
A. WHETHER THE STATE OF FLORIDA SHOULD BE PROHIBITED FROM INTRODUCING BREATH TEST RESULTS IN DUI PROSECUTIONS WHERE LOCAL LAW ENFORCEMENT TESTS THEIR BREATH TESTING EQUIPMENT USING FDLE CERTIFIED STOCK SOLUTIONS WHICH HAVE NOT BEEN TESTED FOR SHELF-LIFE INTEGRITY AND WHERE THE QUANTITIES OF ALCOHOL CONTAINED IN THE SOLUTION ARE [SIC] NOT NECESSARILY KNOWN?
B. WHETHER THE STATE OF FLORIDA SHOULD BE PROHIBITED FROM INTRODUCING BREATH TEST RESULTS IN DUI PROSECUTIONS WHERE THE INITIAL ALCOHOL SAMPLES FURNISHED BY FDLE WERE PREPARED WITH CONCENTRATIONS OF ALCOHOL WHICH WERE ONLY WITHIN A “RANGE” OF CONCENTRATIONS THAT MAY RESULT IN THE ACCURACY (AS OPPOSED TO PRECISION) OF THE INSTRUMENT BEING UNRELIABLE?
Friedrich, 681 So.2d at 1159-1160.
As in this case, a number of DUI defendants in Friedrich consolidated their motions to suppress their breath tests results, arguing that they were scientifically unreliable because the State failed to establish rules and regulations regarding testing. The certified questions, as in this case, raised potential problems with the chemical composition of the ARS. Tom Wood, the FDLE senior analyst who testified in the consolidated hearing here, provided similar expert testimony in Friedrich. The court held that the lack of rules regarding the composition of the ARS did not render the results inadmissible:
Insubstantial differences or variation from approved techniques and actual testing procedures in any individual case do not render the test nor test results invalid.
In this case, there are no rules or regulations which have been promulgated concerning the composition of the stock solution which is used to test the Intoxi-lyzer machines. The evidence presented by the state in this case established the breath tests were made in substantial compliance with the statutes and rules currently in effect. In such a case, the results of breath tests are admissible if they are sufficiently reliable so as to be *1229 generally acceptable in the scientific community.
Wood testified that the range of accuracy he established for the chemical composition of the stock solution prepared by him in the FDLE laboratory was sufficiently accurate for scientific purposes. No testimony controverted his position....
We think the state in this case met its burden to establish the admissibility of the breath tests in these cases. The appellees’ attack on the admissibility, in general, of the results of the breath tests based on the range of composition of the stock solution is speculative and theoretical....
In all cases, the state has the burden of establishing the reliability of its testing and methods of ensuring the scientific accuracy and reliability of the breath test results. It must do a competent job, but not a perfect one.
Id. at 1163-1164 (citations omitted.)
Although the FDLE may have been late in complying with the APA, as a practical matter the use of the unpromul-gated COA form does not diminish the reliability of the tests. As in Friedrich, the evidence presented by the State to the county court was that the breath tests were in substantial compliance with the statutes and rules in effect, and they were scientifically reliable. Also as in Fried-rich, Tom Wood testified here that the range of accuracy he established for the chemical composition of the ARS to be prepared by Guth was sufficiently accurate for scientific purposes. No testimony controverted his position.[7] There is no evidence that Tom Wood’s concentrations were erroneous, that the ARS was not scientifically accurate, or that different concentrations or procedures would have led to different results. The protocol and techniques designed by FDLE and Tom Wood regarding the stock solution upheld in Friedrich were more ambiguous and subject to greater variance than those certified by the COA form in this appeal because the solutions were diluted by each enforcement agency. Here, the ARS made by Guth was according to the guidelines set by Tom Wood, which were eventually codified by rule.
The petitioner and the appellant argue that as a result of the failure to adopt the COA form and the criteria as a rule, the breath test results are inadmissible and at the very least the State is not entitled to utilize the presumption of intoxication. We find, however, that in light of the unrefuted testimony concerning the reliability of the testing methods and FDLE procedures there is no reason to exclude the test results.
In Veilleux v. State, 635 So.2d 977 (Fla.1994), the supreme court was confronted with the issue of whether a change in the breath machines and the forms used to verify reliability of those machines required a rule under the APA. Id. at 977. There, the supreme court adopted the discussion of the Second District in State v. Berger, 605 So.2d 488 (Fla. 2d DCA 1992), in regard to this issue:
[W]e determine that HRS’ failure to promulgate a rule to provide a test for *1230 reliability at the monthly and annual inspections does not preclude the state’s use of breath testing results in a criminal trial. The statutory language of section 316.1932(l)(f)l., Florida Statutes (1991), very clearly requires that the rules and regulations precisely specify the test or tests and that they be adopted after public hearing.
We agree ... that these changes are insubstantial and do not affect the reliability of the tests.... Thus, we conclude ... that the entire administrative scheme sufficiently ensures the reliability of results even though it does not set forth specific standards with reference to monthly and annual inspections. Thus, we hold that the trial court erred in suppressing the breath test results in the instant case.
Id. at 491. Here, as stated above, Tom Wood testified that there were very minor differences between the COA form used before 1999 and the COA form adopted by rule, effective July 7, 1999. Most importantly, Tom Wood testified that both the Guth-supplied ARS and that supplied after July 7, 1999, were scientifically rehable. There was no evidence refuting this testimony.
The proper remedy for violation of the APA in failing to properly promulgate the COA form is prohibiting an agency from relying on that unpromulgated rule or forcing the agency to go through the rule-making process. See, § 120.56(4)(e), Florida Statutes; Exclusive Inv. Mgmt. & Consultants, Inc. v. Agency for Health Care Admin., 699 So.2d 311, 313 (Fla. 1st DCA 1997) (allowing AHCA to properly explicate its non-rule policy); cf. Fed’n of Mobile Home Owners of Fla., Inc. v. Fla. Manufactured Hous. Ass’n, Inc., 683 So.2d 586, 593 (Fla. 1st DCA 1996) (invalidating repeal of rule, finding repeal was a “rule” requiring formal rulemaking procedure, agency failed to prove that rulemaking was impractical, and there was “no credible evidence” of a good faith attempt to expeditiously use the rulemaking procedure to address these policies). Section 120.56(4)(e), states that an agency “shall be permitted to rely upon” an unpromul-gated rule, such as the COA form, if it is substantially similar to a subsequent similar rule promulgated under section 120.57(l)(e).[8]
In Osceola Fish Farmers Ass’n, Inc. v. Division of Administrative Hearings, 830 So.2d 932 (Fla. 4th DCA 2002), the court ruled that section 120.56(4)(e) rendered moot a challenge to a policy it claimed was an unpromulgated rule. There, a fish farmers’ association sought an administrative determination that the Fish and Wildlife Conservation Commission’s statement on lake water level management (similar to the COA form in this case) was an una-dopted rule. The court affirmed the ALJ’s ruling that the agency could rely on the statement because prior to the entry of the final order in the administrative proceed *1231 ings the agency published a proposed rule addressing the statement and proceeded expeditiously and in good faith to adopt the rule:
[T]he issue is whether an administrative agency can avoid an adverse ruling in a section 120.56(4) proceeding and the consequences of an award of attorney’s fees and costs to the petitioner under section 120.595(4) if, prior to entry of a final order, the agency publishes a proposed rule addressing the statement and proceeds expeditiously and in good faith to adopt the rule....
[I]t becomes clear that the purpose of a section 120.56(4) proceeding is to force or require agencies into the rule adoption process. It provides them with incentives to promulgate rules through the formal rulemaking process....
[T]he plain language of section 120.56(4)(e) allows the agency to avoid an adverse ruling in a section 120.56(4) proceeding (and presumably attorney’s fees and costs) if, prior to entry of a final order in the case, the agency initiates the rulemaking process and proceeds expeditiously to rule adoption.
Id. at 934-935(eitations and footnote omitted).
Although section 120.56(4) generally applies to administrative hearings and rule challenges held under chapter 120, we find that in this case the motion to suppress was essentially an administrative attack. The spirit of section 120.56(4) and the reasoning for the purpose of this section, “to force or require agencies into the rule adoption process,” is implicated in this case. Because FDLE had already initiated the rule-making procedure for the adoption of the COA form as a rule by the time the motion to suppress was heard, there is no question that FDLE was acting expeditiously and in good faith to adopt the COA form as a rule. Thus, the State was allowed to rely upon the COA form, and is entitled to the statutory presumption of impairment.
Ultimately, the question here is not one of lack of procedures as in Miles, which may result in prejudice to a defendant because of inaccurate results. Rather, the question is whether a technical violation of administrative procedures which has been subsequently cured should invalidate a statutory presumption of impairment. Where, as in Miles II, protection of a defendant’s due process rights mandates the severe remedy of denying the State utilization of the statutory presumption, the remedy in circumstances such as those in the instant case should be to require the State to prove the legitimacy of the existing procedure — which the State has done here.
The appeal is AFFIRMED. The petition is DENIED.
BARFIELD and DAVIS, JJ., concur.

. Scott Jenkins has filed a petition for writ of certiorari for review of an opinion of a circuit court sitting in its appellate capacity affirming a denial of a Motion to Suppress and the subsequent Judgment and Sentence; James Howard's case is before us on questions certified by the county court as being ones of great public importance.

. Section 316.193(l)(a) and (c), Florida Statutes, states that for determining guilt under the DUI statute, a person is "under the influence of alcoholic beverages” if he or she has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath. All references to breath test results herein are per 210 liters of breath.

. The rules relating to evidentiary breath and blood testing are 11D-8.002 — 11D-8.017 Florida Administrative Code.

. Section 120.52(8) defines an invalid exercise of delegated legislative authority, in relevant part, as "action which goes beyond the powers, functions, and duties delegated by the Legislature. A proposed or existing rule is an invalid exercise of delegated legislative authority if ... [t]he agency has materially failed to follow the applicable rulemaking procedures or requirements set forth in this chapter...."

. We are not holding that section 316.1932, as it existed at the time of this challenge, required the promulgation of the COA form as a rule. Our holding is based on the requirements of chapter 120. See Wissel v. State, 691 So.2d 507 (Fla. 2d DCA 1997). We note that section 316.1932 was amended by chapter 2000-226, Laws of Florida, to explicitly require FLDE’s Alcohol Testing Program to promulgate rules for testing and inspecting the breath machines.

. Even if Miles II did apply, the supreme court reaffirmed the ruling of Robertson v. State, 604 So.2d 783 (Fla.1992), that when there is no assurance of compliance with sections 316.1932-316.1934, the State must revert back to the common law approach for admitting the blood alcohol test results. Miles II, 775 So.2d at 956. The court reiterated the three-prong predicate required to admit test results: (1) the test was reliable; (2) the test was performed by a qualified operator with the proper equipment; and (3) expert testimony was presented concerning the meaning of the test. Id. Here, the State satisfied this predicate through the testimony of Tom Wood.

. Interestingly, although the appellant, the petitioner, and the amicus curiae here claim that the concentrations in the ARS (and corresponding COA form verifying the ARS), should have been subject to the rule-making process, there was no comment regarding these concentrations when the rule was adopted in 1999.

. Section 120.56(4)(e), Florida Statutes (2002), stated in relevant part:
Prior to entry of a final order that all or part of an agency statement violates s. 120.54(l)(a), if an agency publishes, pursuant to s. 120.54(3)(a), proposed rules which address the statement and proceeds expeditiously and in good faith to adopt rules which address the statement, the agency shall be permitted to rely upon the statement or a substantially similar statement as a basis for agency action if the statement meets the requirements of s. 120.57(l)(e)....
Section 120.56(4)(e) was revised by chapter 2003-94, Laws of Florida.